## SCHENCK v. GRIFFIN.

1. After judgment in an attachment suit, to which the defendant has not appeared, the defendant may, within one year, bring an action to recover from the plaintiff in attachment and the applying creditors severally, moneys due and owing to them from the defendant in attachment, which they have received under the attachment proceedings. The judgment in attachment will not conclude the defendant as to the existence of the debts for which it is entered.

2. In such action brought against the plaintiff in attachment—*Held*, 1, that the action would lie, either if the plaintiff's claim was one for which an attachment could not legally be issued, or, if the sum recovered was not, in fact, due and owing ; and, 2, that the damages recoverable included the amount received by the plaintiff in attachment on his claim, and also so much of the money made out of the property attached as was applied to the payment of the costs and expenses of the attachment suit.

3. The defendant in attachment is not estopped from his action to recover moneys received by the plaintiff and applying creditors under the attachment which are not due and owing, by the fact that he knew of the pendency of the attachment suit, and did not enter his appearance to it. He had an election to appear to the suit, or bring his action afterwards.

4. Effect of a judgment in attachment considered.

5. The property seized under the writ of attachment was a chattel which the defendant in attachment had sold to one L., with an implied warranty of title. In replevin brought by L. against the officer, the chattel was determined to have been subject to the prior lien of the at-

tachment. *Held*; that the voluntary payment of the damages in the replevin suit by the defendant in attachment, to relieve himself from liability on his warranty of title, was not a voluntary payment in the attachment suit, although the money so received was the fund distributed in the attachment proceedings ; and that the defendant in attachment was not, by such payment, barred of his action to recover it back

6.  Evidence of usage or custom in any particular trade or business, is admissible to show the implied understanding of parties, in the absence of an express contract. But, where there is a contract either by parol, or in writing, its terms must fix the rights of the parties, and it cannot be contradicted by proof of usage or custom.

7.  The admission of evidence of extraneous circumstances not material to the issue which bear remotely on the issues involved in the cause, or upon the credibility of witnesses, is within the discretion of the judge, and its admission or rejection is no ground for reversal on error

8.  The credit of the witness cannot be impeached by proof that he testified, on a former trial, to the same facts, and the jury discredited his testimony.

In error to the Supreme Court.

Griffin was the owner of a horse, which he offered to sell to Schenck. The price was agreed upon between the parties, and the horse delivered to Schenck. Schenck made a note for the sum agreed on as the price of the horse, payable in thirty days, and gave it to Griffin. Before the note came due, the horse died. The note being in the hands of a third person for value before maturity, was paid by Schenck when it came due. For the money thus paid, Schenck sued out a writ of attachment against Griffin as a non-resident debtor, which was executed by attaching a mare in the possession of one Lawrence. Lawrence claimed the mare as his property by purchase from Griffin, and took her from the sheriff by a writ of replevin. The sheriff pleaded in the replevin that the mare was the property of Griffin when the attachment was issued, and justified under the writ of attachment. At the trial, a verdict was found for the sheriff, and a return to him was adjudged. Instead of returning the mare, Griffin paid to Lawrence the penalty of the replevin bond and interest, which money was paid to the sheriff or the auditor in the at-

tachment suit, and was, by the latter, after deducting his fees and expenses, paid over to the attorney of the plaintiff in attachment.

Griffin having failed to appear to the attachment, final judgment was entered in favor of Schenck for the amount he paid on the note, with interest and costs of suit.

The action of replevin was not decided until after the final judgment was entered in the attachment suit.

Upon these circumstances, Griffin brought an action of trespass on the case against Schenck to recover back the moneys received by the auditor under the attachment.

The declaration stated the filing of the affidavit, the suing out of the writ of attachment, the seizure of the defendant's property under it, the proceedings in the attachment to final judgment, that the money in question came to the hands of the auditor, and was paid to Schenck in pursuance of the attachment act, and alleged that the moneys so received were not, in whole or in part, due and owing by Griffin to Schenck, by means whereof an action hath accrued, &c.

The controversy at the trial was, whether the transaction was a sale of the horse—the note being given for the purchase-money—or whether the horse had been merely left with Schenck for trial, with a view to a purchase, if the horse suited him, and the note had been lent by Schenck to Griffin for the accommodation of the latter.

The jury found a verdict for Griffin for the full amount claimed, whereupon this writ of error was sued out.

For the plaintiff in error, *J. F. McGee.*

Contra, *Gilbert Collins.*

The opinion of the court was delivered by

DEPUE, J.   The case was argued here on objections to the declaration and exceptions taken at the trial.

The exception mainly relied on is, that judgment having been recovered in the attachment suit, the rights of the parties

were conclusively settled, and the liability of the defendant for the debt was *res adjudicata.*

Foreign attachment is a peculiar proceeding to compel the appearance of a debtor by seizing his property, and in default of appearance, appropriating it to the payment of the debt. It is strictly a proceeding *in rem.* With respect to the property attached, whether it be real or personal, or a debt due the defendant from the garnishee, the judgment and proceedings are conclusive. Neither in a subsequent action by the defendant in attachment against the garnishee for the recovery of the debt attached, nor in an action to recover the lands or chattels levied on, can the defendant in attachment defeat the recovery in the attachment suit by disproving the debt for which the attachment issued. If the court had jurisdiction, the judgment is conclusive, and cannot be called in question for mere irregularities, when offered collaterally. Thus far, and for these purposes, a judgment in attachment has the quality of conclusiveness which pertains to an ordinary common law judgment. *Voorhees* v. *Bank of U. S.*, 10 *Peters* 449; *Cooper* v. *Reynolds*, 10 *Wall.* 309; *McDaniel* v. *Hughes*, 3 *East* 367; *Turbill's Case*, 1 *Saund.* 67, *n.* 1; *Welsh* v. *Blackwell*, 2 *Green* 349; *Lomerson* v. *Hoffman*, 4 *Zab.* 674; *Drake on Attachments*, § 703.

But except with respect to the property attached, the proceeding has no effect. No action can be brought on the judgment recovered, and in an action on the original demand, a judgment in attachment is not competent as *prima facie* evidence of the indebtedness. *Miller* v. *Dungan*, 7 *Vroom* 21; *Rubber Co.* v. *Goodyear*, 9 *Wall.* 807–810.

The proceeding in attachment had its origin in the custom of London, and has been adopted and modified by statutory provisions. By the custom of London, after judgment entered, but before execution is awarded, the plaintiff is required to find sureties to undertake that if the defendant in the attachment shall, within a year and a day, come into court and disprove or avoid the debt demanded, the plaintiff shall restore the money condemned, or so much thereof as

shall be disproved, or else his sureties will do it for him ; and after the satisfaction of the judgment on the record, the defendant may, within a year and a day, sue out a writ of *scire facias ad disprobandum debitum*, which puts the plaintiff to the proof of the debt, and in case of his failure to prove his debt, judgment will pass against him for the restitution of the money, with execution thereon ; and if he be unable or unwilling to restore the money, his sureties will be compelled to pay it for him.    *Locke on Attachment* 19–58 ; *Appendix to Drake on Attachment* 709–732 ; *Serg. on For. Attachment* 48–50 ; *Com. Dig., Attachment F.*

The fifty-sixth section of the attachment act provides that before the plaintiff or other creditor shall receive a dividend, he shall enter into a bond to the defendant, with sureties, with condition that he shall appear to any suit that may be brought against him by the defendant within one year, and pay to the defendant any sum of money which, by the judgment or decree of the court, shall appear to have been received by him, and not due and owing ; which bond shall be filed with the clerk for the benefit of the defendant.    *Revision* 31.

But it was contended, in behalf of the plaintiff in error, that this provision was entirely nugatory, inasmuch as the act did not expressly provide for the bringing of such action.   It is not necessary that it should.   The proceedings by foreign attachment, under the custom of London, was recognized by the common law, and adopted as part of the local law of the city of London, and administered as such in the common law courts.   The common law courts had, furthermore, long before the Revolution, adopted the principle, that the judgment, in such proceedings, did not conclude the defendant as to the existence of the debt for which the attachment was issued, and that he had a remedy to recover back from his adversary the moneys realized thereunder, if they were not due and owing.   And the section referred to plainly recognizes the existence of a remedy by a suit, in which, by the judgment or decree of a court, it shall be adjudged, that moneys received under the attachment, were not due and

owing to the attaching creditors. That remedy can only be obtained by an action such as the plaintiff in this case is prosecuting.

The judge charged the jury that the action would lie either if the plaintiff's claim was one for which an attachment could not legally issue, as where it was for unliquidated damages, or if the sum recovered was not, in fact, due and owing.

Error was assigned on that part of the charge which directed the jury that if the demand of the defendant, for which the attachment was issued, was for unliquidated damages, the action would lie. The instruction on this subject, it seems to me, was correct in every particular. The construction of the first and third sections of the act has been, that an attachment will not lie for unliquidated damages, and that process of attachment can only be used where the demand is for a sum certain. It would be a fair and reasonable construction of the words, "not due and owing," in the fifty-sixth section, to hold that they related to the non-existence of such an indebtedness as might be made the subject matter of a proceeding by attachment.

But it is not necessary, on the present occasion, to decide this point. The only controversy at the trial was, whether the transaction was a purchase of the horse, and the note given for the price, or whether the note was a lent note. The judge, in his charge as to the measure of damages, directed the jury that if they found for the plaintiff, they should make an allowance to the defendant from the contract price for the damages he suffered, in case the sale had been with a warranty, which the animal did not answer. The jury found for the plaintiff for the full amount. The effect of this finding was to negative the existence of any claim on the part of the defendant for unliquidated damages. The instruction complained of was not relevant to the issue on which the case was tried; and if relevant, became immaterial in view of the finding of the jury; if erroneous, the court would not reverse under these circumstances.

Another assignment of error is upon the refusal of the

judge to charge that the payment of the money by Griffin being a voluntary payment, an action would not lie to recover it back.

Lawrence, when he bought the mare of Griffin, paid him the purchase money, and a warranty of his title was implied from the sale. The replevin suit was prosecuted by Lawrence, at the request of Griffin, who agreed to indemnify him against the consequences. The result of the suit was a determination that the title to the animal sold was defective, in that it was subject to the lien of the attachment suit.

The plaintiff in attachment was not a party to that suit. It was brought against the sheriff, who justified under the process of attachment. The merits of the claim of the plaintiff in attachment were in no wise involved, and could not be litigated in that suit. After an adverse result Griffin, instead of subjecting himself to the costs and expenses of an action on his warranty, saw fit to discharge his liability to Lawrence, by payment of the penalty of the replevin bond, and interest, to remove the encumbrance on the title, which he was legally bound to defend.

The facts proved at the trial do not bring this case within the rule of the law invoked. That rule is founded on considerations of public policy—that it is a matter of public interest, that there should be an end of litigation; and, therefore, that money voluntarily paid, with a full knowledge of all the facts, or paid in satisfaction of legal process, cannot be recovered back. The reason on which the rule rests is, that a party having once had opportunity to contest the merits of the demand made upon him, and having submitted to it, and satisfied it, is concluded from re-opening the controversy by reclaiming what he has voluntarily parted with.

The payment was not made by Griffin in satisfaction of the demand for which the attachment was issued. The money was paid to Lawrence to enable him to satisfy the claim of the sheriff, and remove the encumbrance on his title. Final judgment had then been entered in the attachment suit. Neither in the replevin suit, nor in the attachment proceed-

ings, as they then were, had Griffin the opportunity to contest the merits of the demand of Schenck. In the then situation of affairs, he could do nothing but submit to an action by Lawrence for a breach of his warranty, or to provide him with the means of curing the defect in his title. In the disposition subsequently made of the money, Griffin was in nowise a consenting party. He had no choice but to pay either what would satisfy the damages for the breach of his warranty, or what would enable Lawrence to remove the encumbrance. In the removal of the encumbrance by payment to the sheriff, in lieu of a return of the property, in compliance with the condition of the replevin bond, the sheriff was put in possession of funds to pay to the auditor, and be by him paid over under the attachment. The money provided by Griffin thus came to the hands of Schenck. But the remedy to recover it back, if not due, which is given by the law relating to proceedings by attachment, still remained. The charge of the judge, that if Griffin had voluntarily paid the money to the auditor under the attachment proceedings, without any coercion, it could not be recovered back, but that the payment, after the conclusion of the replevin suit, to perfect the title which Griffin warranted, and which he was legally bound to make good, should not be considered such a voluntary payment, was as favorable to the defendant as he was entitled to have.

Exception was also taken to the refusal of the judge to non-suit, on the ground that Griffin having knowledge of the attachment suit before judgment entered, and having neglected to enter an appearance and litigate therein the demand of Schenck, was estopped from bringing this action.

One of the peculiarities of the proceeding by attachment is, that the defendant may appear during the pendency of the suit and contest the plaintiff's demand, or, within the time limited after judgment, may dispute the debt for which the attachment issued. Both these remedies are given in the alternative. The defendant has his election to pursue either. If he appears to the suit, he makes the judgment, if any be

recovered, a judgment *in personam.* He is under no obligation to give the plaintiff that advantage. He may leave him to prosecute his proceedings *in rem,* and avail himself of the right which the law gives him of recovering back the proceeds realized, if the debt be not due. Any other exposition of the law would be manifestly unjust. The demand in controversy may be large, and the property attached of comparatively little value. The defendant was under no compulsion to submit himself to the hazard of a judgment against him, personally, in a forum which had no jurisdiction over his person, or else be estopped from pursuing a remedy which he is legally entitled to, in case the proceeding be unlawfully prosecuted.

Exception was also taken to the charge of the court, that in case the jury found for the plaintiff, they should include in the verdict so much of the money realized in the attachment suit as was applied in payment of the costs and expenses of the attachment suit. The contention was, that the defendant did not receive the costs and expenses himself; that they were paid to his attorney; that he only received the sum of $381.77, and the balance of $100.04 was required for taxed costs and expenses in the suit.

The plaintiff in the attachment was liable to his attorney and to the officers of the court for the costs and expenses of his suit. If nothing had been realized out of the property attached, he would have been compelled to pay them out of his own pocket. What was received for that purpose out of the property attached, was applied for his benefit—for his indemnification against outlay for which he was responsible, and was adjudged to be due to him from the defendant in attachment, on the supposition that the debt for which the attachment issued was due and owing. The jury having found that there was no such debt, the money so received was money received by the plaintiff in attachment " not due and owing," as much so as that part of the money realized as was received by him on his principal claim.

The plaintiff in error offered to prove that it was the cus-

tom in that section of the country, in selling horses, to give the purchaser time to try the horse before the sale was final. The judge excluded the evidence, and exception was taken.

Evidence of usage or custom in any particular business or trade is admissible to show the implied understanding of parties, in the absence of an express contract. But where there is a contract, either by parol or in writing, its terms must fix the rights of parties, and it cannot be contradicted by proof of usage or custom. *Steward* v. *Scudder*, 4 *Zab.* 96.

Both parties relied upon an express contract. The contention on the trial was as to the terms of the contract. That was the issue before the jury. Upon that issue the evidence excluded was immaterial.

But it was contended that, there being a conflict in the testimony by the disagreement of witnesses as to the facts, the evidence was competent to give probability to the defendant's testimony, that he took the horse merely on trial.

If the proof offered could have had any weight in deciding the issue between the parties, its effect would be so slight that the plaintiff in error cannot be said to be injured by its exclusion.

The cardinal rule in the trial of causes is, that the evidence shall be confined to the issues made by the parties. An adherence to this rule is of great practical importance in trials by jury. In almost every case of controverted facts, an infinite variety of extraneous circumstances may be suggested, which may bear remotely upon the issues involved, or upon the credibility of the witnesses. The admission of the proof of such circumstances must be left to the discretion of the judge, otherwise the jury might be confused by the multitude of collateral issues, tending to a miscarriage of the cause, and the trial expanded to an unreasonable extent.

On error, such evidence must be regarded—as it is—as immaterial to the issue, and therefore its rejection or admission is no ground for reversal.

The plaintiff in error also offered to prove that one of the witnesses called by the plaintiff below had given the same

evidence on the trial of the replevin suit, and that his testimony was not credited by the jury in that case. The evidence was offered as affecting the credibility of the witness. The evidence was properly excluded. The credibility of a witness may be attacked by proof of contradictory statements made by him on other occasions, or by proof of his general reputation for truth and veracity, but his credit cannot be impeached by proof that he was not believed by a jury on a former trial.

There being no error on the record, or in the proceedings below, the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, REED, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN—10.

*For reversal*—None.