937 A.2d 965

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. FREDERICK T. HAMILTON, DEFENDANT–
APPELLANT.

Argued October 10, 2007—Decided January 16, 2008.

*David A. Gies,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Mary E. McAnally,* Deputy Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General of New Jersey, attorney).

Justice LaVECCHIA delivered the opinion for the Court.

 Credibility, of the utmost importance for any witness, takes on heightened significance when the witness is the defendant in a criminal trial. Our rules of evidence allow a witness's prior convictions to be admitted for impeachment purposes despite the obvious prejudice that flows from such evidence, particularly for a criminal defendant. *See N.J.R.E.* 609. That said, trial

courts retain discretion to prevent the occurrence of undue prejudice from prior-conviction evidence. *Evidence Rule* 609 provides that "[f]or the purpose of affecting the credibility of any witness, the witness' conviction of a crime shall be admitted *unless excluded by the judge as remote or for other causes.*" *Ibid.* (emphasis added); *see also State v. Sands*, 76 *N.J.* 127, 144–45, 386 *A.*2d 378 (1978) (allowing court to consider age and nature of prior crime, when weighing relevance of conviction against prejudice to defendant, in determining whether to admit prior conviction). Even when a prior conviction is admissible, the trial court must determine whether the jury should be shielded nevertheless from the prior conviction's details.

In *State v. Brunson*, 132 *N.J.* 377, 391, 625 *A.*2d 1085 (1993), we held that when the State introduces a prior conviction that is the same as or similar to the offense charged, the court should prevent the jury from hearing the specifics of the prior offense. Such convictions are required to be "sanitized," thereby allowing the jury to learn only limited information about the conviction, including the date, degree, and number of offenses of a defendant. *Id.* at 391–92, 625 *A.*2d 1085. Sanitization protects a defendant from the risk that a jury will be influenced by knowledge of the prior conviction for the same or a similar offense when determining whether to convict the defendant on the new charge. *See id.* at 392, 625 *A.*2d 1085. The question here is whether that is the limit of a trial court's authority to sanitize a defendant's prior conviction.

I.

A.

This appeal involves a conviction for drug possession. Defendant, Frederick Hamilton, was convicted of third-degree possession of heroin, *N.J.S.A.* 2C:35–10a(1). The circumstances of his arrest on the drug charge were complicated, however, by the fact that he had been pulled into an investigation of the suspicious death of Ms. Diana Butler. The Atlantic City police came into contact with defendant when responding to a report that a woman

lay dead in an Atlantic City apartment. Although never a suspect in the investigation into that death, defendant allegedly was "the last person to be in the company of the deceased ... prior to her being found dead." The backdrop of the suspicious death investigation was of importance to defendant at his trial because the State intended to impeach defendant if he took the stand, based on his prior conviction for aggravated manslaughter and a related conviction for unlawful possession of a weapon. The manslaughter conviction involved the death of a young woman.

In his trial on the drug-possession charge, defendant could not, and did not, contend that the two prior convictions were inadmissible for purposes of impeaching his credibility. He conceded that they were not remote and, therefore, were admissible under *Rule 609*. Rather, he argued that the facts of his prior homicide and related weapon-possession convictions should be sanitized because they would cause him undue prejudice because of their similarity to the circumstances of his present arrest. Defendant feared that the jury would cease to hear with an open mind his version of what transpired during his police questioning once it heard "prior homicide conviction" reverberate through the courtroom. In these unique circumstances, defendant argued that the trial court should exercise its discretion to sanitize the prior convictions because the connection between his prior homicide conviction and the suspicious-death-investigation backdrop to his arrest would unfairly color the jury's perception of him.

In seeking to use the convictions to impeach defendant, the State maintained that defendant was not entitled to sanitization. Because the prior convictions were not the same or similar to the specific offense presently charged, as was the case in *Brunson,* the State convinced the trial court that it lacked authority to sanitize in this matter.

### B.

Defendant's credibility was pivotal to his defense because of the vastly different accounts of his interactions with the police during the investigation into Ms. Butler's death.

According to the State's version of the events, Ms. Butler's boyfriend telephoned police after discovering her body. The police investigation established that defendant, a friend who was at Ms. Butler's apartment the day of her death, had been the last person to see her alive. When asked, defendant agreed to answer questions in connection with the investigation into Ms. Butler's death.

Defendant was escorted to police headquarters. Upon arrival, Detectives Rauch and Bennett left him in an interview room without searching him. As the officers later explained, they did not search defendant because he was not a suspect and because his apparel made it readily apparent that he did not have any weapons on him. Although the officers indicated that they would be back in a few minutes, they did not return to interview defendant until significantly later.[1] That interview lasted only a few minutes before defendant became angry and shouted, "[L]et me go or lock me up," and, "[A]rrest me then," while the officers attempted to reassure him they only wanted to ask questions about Ms. Butler. As he shouted, defendant began pulling objects out of his pants pocket and slamming them on the desk. When defendant took the contents out of another of his pockets, a shocked look came over his face. He threw an object toward a trash can, but it missed and landed at the officers' feet. The object later was confirmed to be seven bags of heroin, rubber-banded together and labeled "Superman."

Defendant's version of his interaction with police was entirely different. He testified that Butler's boyfriend phoned him and asked him to come to their apartment because Butler was comatose. When defendant arrived, a detective answered the door and asked him for identification. After the detective checked defendant's identifying documents, she informed him that there appeared to be an outstanding child-support-related warrant for him.

---

[1] The State did not contradict defendant's testimony that he was left alone in the room for several hours.

She requested that he go to the police station for questioning about Butler and to confirm whether the warrant truly related to him. He agreed and, on arrival at headquarters, was searched for weapons. The search produced his phone, identification, money, and some pieces of paper. Defendant testified that he then was left alone in an interrogation room for approximately five hours, during which he had one cigarette break and one bathroom break.

Finally, Detective Rauch entered the room and asked defendant about his prior homicide conviction. Defendant responded that that had nothing to do with Ms. Butler's death and asked to leave. He was told that he was not under arrest but that he could not go because the officers wanted to question him about Ms. Butler's death. According to defendant, Rauch then punched and kicked him and demanded to know what had happened at Butler's apartment. Detective Bennett then entered and asked defendant to cooperate. When defendant disclaimed any knowledge of what caused Butler's death, Rauch dropped a bag of heroin on the interrogation room floor and said, "it's yours now if you don't tell us what we want to know." Failing to get anything more out of defendant regarding Ms. Butler's death, the officers arrested him for possession of heroin.

As noted, the State sought to impeach defendant's trial testimony with his 1986 convictions for aggravated manslaughter, *N.J.S.A.* 2C:11–4, and unlawful possession of a handgun, *N.J.S.A.* 2C:39–5(b).[2] The trial court found that the convictions were not remote under *Sands* because Hamilton had not been eligible for parole until 1997. Further, the trial court held that although prejudicial, the convictions did not merit sanitization under *Brunson* because they were not substantially similar to the pending charge of heroin possession. The trial court rejected defendant's argument that it could sanitize the aggravated manslaughter conviction because police had arrested Hamilton after escorting

[2] The State did not attempt to introduce defendant's earlier, 1985 conviction for possession of heroin.

him to the police station from the scene of a suspicious death. The court stated that

> in a sense ... there's prejudice, but there's always prejudice in admitting a prior record and if somebody does have a prior record for homicide. I know of no rule of exclusion or any case law of exclusion that says simply because someone has ... been convicted of a homicide in his past that that gets sanitized....
>
> ....
>
> I am not going to order that the ... two charges for the weapons offense or the [aggravated manslaughter] be sanitized because I believe I'm following *Sands* and I'm following *Brunson* and I know of no exception.
>
> I understand [the defense's] point. I understand [the] argument, but that, to me, is not the rule at this time.

Although the court did not sanitize the prior convictions, it sought to reduce the potential prejudice to defendant by instructing the jury that Ms. Butler's death had not been ruled a homicide and that defendant was never considered a suspect in the police's investigation into her death.[3] Prior to defendant's testimony, the court stated,

> I do want to give you a cautionary instruction because you did hear testimony in the State's case with regard to the police desire to question the defendant, Mr. Hamilton, about a time proximity to when he had last seen Diana Butler, who is the decedent.
>
> I want to explain to you that—and as firmly as I can that as to the death of Diana Butler, Mr. Hamilton never was, never has been a suspect nor a defendant in that case. In fact, the case was never ruled or found to be a homicide. So, no one has been charged in that matter nor is anyone likely to be charged in that matter.
>
> So, you cannot, in any way, shape or form speculate or infer either against the defendant or in the defendant's favor either for the State or against the State or for the defendant or against him in deciding whether or not he is guilty of possessing the drugs in this case.

After the cautionary instruction was delivered, defense counsel introduced the prior convictions at the outset of defendant's direct examination. On cross-examination, the prosecutor refrained from using the prior convictions to impeach defendant. However, she reminded the jury during summation that "[defense counsel] explained to you about [defendant's] prior record."

---

[3] Apparently, Ms. Butler's death ultimately proved to be caused by a drug overdose.

When charging the jury, the court reiterated its cautionary instruction about use of the police investigation into Ms. Butler's death. The court then instructed the jury on how to limit its consideration of defendant's prior convictions.

> You have heard evidence that Mr. Hamilton has previously been convicted of a crime or crimes. This evidence may only be used in determining the credibility or believability of the defendant's testimony. You may no[t] conclude that the defendant committed the crime charged in this case or is more likely to have committed the crime charged here simply because he committed a crime or crimes on another occasion.
>
> A jury has a right to consider whether a person who has previously failed to comply with society's rules as demonstrated through a criminal conviction, would be more likely to ignore the oath requiring truthfulness on the witness stand than would a person who has never been convicted of any crime. You may consider in determining this issue the nature and degree of the prior conviction and when it or they occurred.
>
> Our law permits a conviction to be received in evidence only for the purpose of affecting the credibility of the defendant and for no other purpose. You are not, however, obligated to change your opinion as to the credibility of the defendant simply because of a prior crime or prior conviction. You may consider such evidence, along with all the other factors we previously discussed, in determining the credibility of the defendant.

The jury found defendant guilty of the heroin possession charge. He was sentenced to five years imprisonment with two-and-one-half years of parole ineligibility. On appeal, the Appellate Division affirmed the conviction in an unpublished opinion.[4] Although the panel clearly was troubled by the court's failure to sanitize defendant's prior convictions, it observed that any extension of the law requiring sanitization would have to come from this Court.

We granted defendant's petition for certification, State v. Hamilton, 188 N.J. 493, 909 A.2d 727 (2006), and ordered supplemental briefing on whether the trial court erred in declining to sanitize defendant's prior convictions.

## II.

Our evidence rules permit the State to introduce into evidence a witness's prior convictions for impeachment purposes. *See*

---

[4] Although the panel affirmed defendant's conviction, it remanded for re-sentencing under State v. Natale, 184 N.J. 458, 878 A.2d 724 (2005).

*N.J.R.E* 609. Nonetheless, we require sanitization of prior convictions in certain circumstances. *See Brunson, supra,* 132 *N.J.* at 391, 625 *A*.2d 1085. The present state of the law governing use of prior convictions for impeachment can best be understood in the historical context in which it has developed. Much of that history was tracked in Justice Schreiber's thorough opinion in *State v. Sands,* 76 *N.J.* 127, 386 *A*.2d 378 (1978).

At common law, a criminal defendant was not permitted to testify on his own behalf. *Id.* at 134, 386 *A*.2d 378. The Legislature eliminated that prohibition in 1871, directing that " 'upon the trial of ... any person charged with crime, the [defendant] shall be admitted to testify as a witness ... in his own behalf.' " *Ibid.* (quoting *L.* 1871, *c.* 40, § 1). Thereafter, in 1874, the Legislature amended the rules of evidence to permit the State to impeach witnesses with evidence of their prior convictions. *Id.* at 133, 386 *A*.2d 378. That predecessor to *Rule* 609 was later incorporated into *N.J.S.A.* 2A:81–12, which provided that, " '[f]or the purpose of affecting the credibility of any witness, ... his conviction of any crime may be shown by examination or otherwise ...' " [5] *Ibid.* (quoting *N.J.S.A.* 2A:81–12 (repealed by *L.* 1999, *c.* 319, § 2)); *see also State v. Hawthorne,* 49 *N.J.* 130, 134, 228 *A*.2d 682 (1967) ("In substance [the 1874 Act] continues to exist as *N.J.S.A.* 2A:81–12.").

This Court originally interpreted *N.J.S.A.* 2A:81–12 to require the admission of all prior-conviction evidence offered by the State, regardless of the conviction's remoteness to the defendant's credibility. *See Hawthorne, supra,* 49 *N.J.* at 135, 228 *A*.2d 682. However, in *Sands, supra,* we reversed *Hawthorne* and recognized that trial courts have the discretion to deny the admission of certain conviction evidence. 76 *N.J.* at 136–38, 140, 386 *A*.2d 378. Prior-conviction evidence may be excluded when the evidence's

---

[5] As expressly noted in *Sands, supra, N.J.S.A.* 2A:81–12 did not limit the types of crimes that may be admitted for impeachment purposes. Any crime was admissible "to shed ... light on [a witness's] credibility." 76 *N.J.* at 142, 386 *A*.2d 378.

"probative force because of its remoteness, giving due consideration to relevant circumstances such as the nature of the crime, and intervening incarcerations and convictions, is substantially outweighed so that its admission will create undue prejudice." *Id.* at 147, 386 *A.*2d 378.

The holding in *Sands* was premised on the well-recognized principle that trial courts are expected to exercise control over the admission of relevant evidence, including impeachment evidence. *Id.* at 140, 386 *A.*2d 378. We previously had held that, where impeachment evidence bears remotely upon the credibility of the witness, its admission " 'must be left to the discretion of the judge, otherwise the jury might be confused by the multitude of collateral issues.' " *Ibid.* (quoting *Schenck v. Griffin,* 38 *N.J.L.* 462, 471 (E. & A. 1875)). Further, our rules of evidence specifically allowed trial courts to exclude, in their discretion, substantially prejudicial evidence of limited probative value. *Id.* at 144, 386 *A.*2d 378 (citing former *Evidence Rule* 4); *see also N.J.R.E.* 403. Given the discretion historically granted to trial judges to control prejudicial impeachment evidence, we concluded that the Legislature did not intend to mandate a blanket admission of conviction evidence with its enactment of *N.J.S.A.* 2A:81–12. *Id.* at 140–41, 386 *A.*2d 378.

The *Sands* holding reflects this Court's concern about severe and unfair prejudice to a defendant from prior-conviction evidence. The danger of conviction evidence is its capacity to prove a defendant's criminal propensity, turning a jury away from a proper consideration of the evidence. *Id.* at 141, 386 *A.*2d 378. Such evidence may persuade the jury to convict a defendant based on "criminal disposition," rather than on the proofs, undermining the trustworthiness of the jury fact-finding process. *Ibid.* Accordingly, *Sands* imposed a rule granting trial courts discretion to preclude remote and highly prejudicial conviction evidence from trial when necessary to protect a defendant from the danger of undue prejudice. *Id.* at 147, 386 *A.*2d 378. The *Sands* Court further recognized that, once a trial court admits prior convictions,

accompanying limiting instructions are necessary to further contain the evidence's prejudicial effect. *Id.* at 142 n. 3, 386 *A.2d* 378. Trial courts are expected to "explain carefully the limited purpose of prior conviction evidence" in order to reduce "the danger that a jury might improperly use a prior conviction as evidence of the defendant's criminal propensity." *Ibid.*

*Brunson* was the next significant development in this field of law. In *Brunson, supra,* the Court recognized that in certain circumstances the highly prejudicial effect of past-conviction evidence is unlikely to be ameliorated by a remoteness analysis, bolstered by a trial court's limiting instructions.[6] 132 *N.J.* at 390–91, 625 *A.2d* 1085. In *Brunson,* the defendant was on trial for, among other charges, possession of a controlled dangerous substance (CDS) and possession with intent to distribute. *Id.* at 381–82, 625 *A.2d* 1085. The defendant refused to testify after the trial judge ruled that his prior convictions for possession of CDS, possession with intent to distribute, and theft were admissible to impeach his testimony. *Id.* at 382, 625 *A.2d* 1085. The jury convicted the defendant. *Ibid.* However, on appeal, this Court reversed that conviction. *Id.* at 393, 625 *A.2d* 1085.

Although recognizing the probative nature of prior-conviction evidence for purposes of assessing credibility, the Court's reversal was based on several concerns about the highly prejudicial effect of prior-conviction evidence. *Id.* at 385–87, 625 *A.2d* 1085. Such evidence carries the risk that it may be used by a jury to impute to a defendant guilt of the present offense. *Id.* at 385, 625 *A.2d* 1085. The Court noted that persuasive social science literature demonstrated that jurors often have difficulty distinguishing between the impermissible use of prior conviction evidence (to assess

---

[6] Indeed, the Court conceded the inadequacy of limiting instructions in preventing a jury from being turned against a defendant after learning of defendant's other crimes or bad acts, admissible under former *Evidence Rule* 55. *Id.* at 391, 625 *A.2d* 1085 (citing *State v. Stevens,* 115 *N.J.* 289, 309, 558 *A.2d* 833 (1989)).

the likelihood of the defendant's guilt) and the permissible use of the same evidence (to assess that defendant's credibility). *Id.* at 385–87, 625 *A.*2d 1085. The Court also noted that jurors are most likely to misuse prior conviction evidence when the prior and present offenses are the same, as was the case for Brunson. *Id.* at 386–87, 625 *A.*2d 1085. Last, the Court observed that the admission of prior-conviction evidence had been shown to deter defendants from testifying because of the fear that the jury will misuse the evidence. *Id.* at 385, 625 *A.*2d 1085 (citing Harry Kalven, Jr. & Hans Zeisel, *The American Jury* 146 (1966)).

At the same time, the Court acknowledged that the State is entitled to impeach the credibility of a criminal defendant who previously has been convicted of a crime, regardless of whether that crime was similar to the current charges brought against the defendant. *Id.* at 391, 625 *A.*2d 1085. The Court specifically noted that, in our State, the rule governing admission of prior convictions for credibility purposes "does not distinguish between crimes that involve dishonesty and those that do not."[7] *Id.* at 388, 625 *A.*2d 1085. Thus, viewing exclusion of same or similar crimes as an unavailable option, the Court turned to another remedy. To rectify the prejudice the Court perceived as flowing to the defendant and to balance and thereby accommodate the interests of both parties, the *Brunson* Court held that

> in those cases in which a testifying defendant previously had been convicted of a crime that is the same or similar to the offense charged, the State may introduce evidence of defendant's prior conviction limited to the degree of the crime and the date of the offense but excluding any evidence of the specific crime of which defendant was convicted.

[*Id.* at 391, 625 *A.*2d 1085.]

---

[7] In comparison, the *Brunson* Court noted that the analogous federal rule of evidence and those of several sister states required the admission of evidence of prior convictions for crimes involving dishonesty and the like, whereas those rules only permitted the introduction of other convictions when the probative value of the prior conviction outweighed the conviction's prejudicial effect. *Id.* at 388, 625 *A.*2d 1085.

*Brunson's* "sanitization" holding struck a "balance [that] adequately vindicate[d] the State's interest in using the prior conviction to cast doubt on the defendant's credibility without subjecting [the] defendant 'to the extraordinary prejudice that follows if the prior crime was specifically named or described.'" *Id.* at 391–92, 625 *A.*2d 1085 (quoting *State v. Pennington,* 119 *N.J.* 547, 607, 575 *A.*2d 816 (1990)). The holding limited the State to introduction of only the sanitized fact of the conviction of a crime that is "the same or similar to the offense charged" on the theory that those crimes presented the highest risk of prejudice to the defendant.

### III.

*Evidence Rule* 609 allows prior-conviction evidence to be used for purposes of attacking a witness's credibility unless that evidence is excluded based on a *Sands* analysis ("unless excluded by the judge as remote or for other causes"). But, the inquiry does not end at that.

*Brunson, supra,* instructs that trial courts nevertheless retain their ability to ameliorate the highly prejudicial effects of certain convictions that are otherwise fair game for the State's impeachment purposes. 132 *N.J.* at 391–92, 625 *A.*2d 1085. When a jury hears of a conviction of a crime that is substantially the same or similar to the crime charged, there is great risk that the prior crime will be used by the jury for the forbidden purpose of imputing guilt to the defendant. In that setting, we created *Brunson's* mandatory sanitization rule that advanced the truth-seeking objective of criminal trials. We required sanitization because it greatly benefits the defendant and works only a slight detriment to the State. *See Brunson, supra,* 132 *N.J.* at 392, 625 *A.*2d 1085 (observing that "[t]he difference between lack of credibility as a repetitive felon and lack of credibility as a repetitive car thief was negligible to the prosecution, catastrophic to the accused" (internal quotation marks omitted)).

Although the *Brunson* rule arose in the context of a prior conviction that was for the same or similar offense to the crime for

which the defendant was charged, the point to the holding was that trial courts must recognize the risk of undue prejudice from prior-conviction evidence. *See id.* at 391–92, 625 *A*.2d 1085. The further point was that courts have the authority to take steps to neutralize the highly prejudicial effect of particular prior-conviction evidence by eliminating reference to the specifics of the earlier crime. *Ibid.*

In this matter, the trial court felt constrained from sanitizing defendant's prior conviction because it was for an offense that was not "the same or similar to" the one for which defendant was *charged.* In taking that approach the court unduly restricted the *Brunson* sanitization remedy developed to prevent undue prejudice to defendant. Although the facts of this case differ from the precise facts in *Brunson,* this case is nevertheless among the cadre of cases presenting the type of undue prejudice to a defendant for which a sanitization remedy should be considered.

Undue prejudice also can accrue to a defendant when the prior-conviction evidence is so similar to the criminal proceedings that brought defendant under the glare of police scrutiny, that the evidence risks unduly prejudicing the jury's fair hearing of the defendant's version of what transpired. The trial court must assess the likelihood that the jury may simply apply an undifferentiated gloss of criminal propensity to defendant regardless of what he says transpired. In this case, defendant's prior conviction involved a crime that factually resembled the tragic circumstances of the investigation into another young woman's death, and led to defendant's interrogation. The trial court erred in concluding that it had no ability to ameliorate the undue prejudice to defendant through sanitization of the earlier conviction. It is not that the court engaged in a weighing of the probative versus prejudicial effect of the evidence and declined sanitization. Rather, the court concluded that it had no authority whatsoever to utilize a sanitization remedy.

We hold that the trial court should have balanced the parties' interests in respect of the prior-conviction evidence.

*Sands, supra,* and *Rule* 609 allow for such an analysis. Both encompass *Rule* 403 concerns about prejudice. That said, we recognize that the rather unusual circumstances in defendant's trial may not be as likely to recur as those in *Brunson* (prior conviction was for the same or similar offense for which the defendant presently was charged), where we made sanitization mandatory. *Brunson* held that similarity between a defendant's prior conviction and present charge requires sanitization in all such circumstances. That mandatory holding did not foreclose from trial courts the discretion to consider sanitization of prior-conviction evidence in any other circumstance that posed a risk of undue prejudice to a defendant. The unique difficulty present in this case was certainly eligible for a sanitization remedy, as part of the trial court's discretionary authority to control undue prejudice in defendant's trial.[8] The trial court erred in concluding it was forbidden to do so and, therefore, denying defendant's request to sanitize the prior-conviction evidence.

In holding as we do, we do not suggest at this juncture that *Brunson* should be extended expansively to require sanitization for all prior convictions or even for a particular subcategory of offenses, such as those that do not involve dishonesty, false swearing and the like. *See supra* at note 7 (noting that some jurisdictions differentiate between types of offenses when allowing convictions to be used for permissible impeachment purposes). We are ill-equipped in this appeal to consider such steps, which were not advanced by defendant, and about which we lack the benefit of the experience and views of relevant interest groups. However, the subject of sanitization, and its appropriate use by the trial courts, would benefit from a full examination. Our Evidence Rules Committee is well-suited to take up that task. Accordingly, we refer to the Committee the question whether

---

[8] In recognizing the trial court's discretionary authority to sanitize defendant's prior convictions in this matter, we cannot ignore the fact that it was the State's choice to present the circumstances of its investigation into Ms. Butler's suspicious death as part of its case-in-chief against defendant.

sanitization of prior convictions should be expanded and, if so, the extent to which the Committee recommends an expanded category of mandatory, or of discretionary, sanitization of prior convictions.

## IV.

The judgment of the Appellate Division is reversed and the matter remanded to the Law Division.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.