NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0527-15T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

JERMAINE EASON, a/k/a JULITO
EASON and JERMAINE JULITO,

 Defendant-Appellant.

_________________________________

 Submitted April 24, 2017 – Decided May 4, 2017

 Before Judges Nugent and Haas.

 On appeal from Superior Court of New Jersey,
 Law Division, Passaic County, Indictment No.
 11-08-0754.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Michele A. Adubato, Designated
 Counsel, on the brief).

 Camelia M. Valdes, Passaic County Prosecutor,
 attorney for respondent (Tom Dominic Osadnik,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Defendant Jermaine Eason appeals from an August 31, 2015

judgment of conviction for third-degree unlawful possession of a
handgun and from his custodial sentence. He raises the following

arguments:

 POINT I

 CERTAIN CONDUCT BY THE PROSECUTOR WAS GROSSLY
 PREJUDICIAL AND DEPRIVED DEFENDANT OF A FAIR
 TRIAL.

 POINT II

 IT WAS ERROR FOR THE COURT TO FAIL TO SANITIZE
 THE DEFENDANT'S PRIOR CONVICTION.

 POINT III

 THE SENTENCE OF FIVE (5) YEARS WITH TWO AND
 ONE HALF (2 1/2) YEARS OF PAROLE INELIGIBILITY
 WAS EXCESSIVE AND SHOULD BE MODIFIED AND
 REDUCED. (Not raised below).

For the reasons that follow, we affirm.

 In August 2011, a Passaic County grand jury charged defendant

with one count of second-degree possession of a weapon for an

unlawful purpose, N.J.S.A. 2C:39-4(a) (count one), and one count

of third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-

5(b) (count two). At trial, a jury acquitted defendant of the

first count and convicted him of the second. On August 31, 2015,

a judge sentenced defendant to a five-year prison term and imposed

a two and one-half year period of parole ineligibility in

accordance with N.J.S.A. 2C:43-6(b). The judge also ordered

defendant to pay appropriate fines and assessments. Defendant

appealed.

 2 A-0527-15T1
 The State developed the following proofs at trial. At

approximately 2:30 p.m. on March 30, 2011, Officer Frank Narvaez

was off-duty and getting a haircut at a barber shop on Market

Street in Paterson. As he looked out the window, he "observed a

male wearing a red hooded sweatshirt" walking down Market Street

towards Summer Street. The man, later identified as defendant,

reached into his waistband, pulled out a large black handgun, and

pointed it at a man working on his car. Officer Narvaez exited

the barber shop and defendant began walking quickly towards Summer

Street.

 Once outside, Officer Narvaez approached the man working on

his car. The man said, a "black man pointed a handgun at [me]."

After speaking with the man, Officer Narvaez entered his personal

vehicle, put on his police badge, and followed defendant. As he

approached the Summer Street intersection, the officer observed

defendant cross the street in his direction towards Park Avenue.

Officer Narvaez exited his vehicle, took out his service weapon,

and approached defendant. Defendant turned to face the officer

when the two were approximately ten feet from each other.

 Officer Narvaez announced, with his weapon drawn, "police,

police, show me your hands." In response, defendant pulled out

his handgun and pointed it directly at the officer as he continued

to walk across the street. Fearing for his life, Officer Narvaez

 3 A-0527-15T1
discharged his firearm, but did not know whether the rounds hit

defendant. Defendant began to run but continued to point his

weapon at the officer. As defendant ran, he tossed his gun to the

ground and then dropped to the ground himself. Defendant spread

his arms and legs on the ground as Officer Narvaez placed his foot

on defendant's back to hold him down until backup arrived.

 The Passaic County Sheriff's Department and other law

enforcement officers responded. Sheriff's Detective Jason Barbier

testified he took Officer Narvaez's firearm from Paterson Police

Officer Cruz. A few feet away from Officer Cruz, Detective Barbier

recovered a black air gun. Detective Barbier removed the cartridge

from the air gun and placed both weapons in separate boxes.

 Defendant elected to testify. The court held a Sands/Brunson1

hearing to determine the scope of the admissibility of defendant's

2010 third-degree theft conviction, for which defendant received

a 737-day county jail sentence. At the hearing, defense counsel

argued the conviction should have been "sanitized" because the

theft charge allowed the jury to draw inferences about defendant's

current weapons charges. Specifically, defense counsel believed

the jury could infer defendant pointed the gun at the man working

on his car in an attempt to rob him.

1 State v. Sands, 76 N.J. 127 (1978); State v. Brunson, 132 N.J.
377 (1993).

 4 A-0527-15T1
 The judge admitted defendant's prior conviction for purposes

of impeachment, and found that the theft was distinct from the

weapons offenses. Accordingly, the judge declined to sanitize the

conviction, but limited the description of the prior offense to

"theft" rather than "theft from a person."

 Defendant's testimony contradicted the State's proofs.

Defendant testified he was walking to a grocery store on Market

Street with his friend, Qua. During their walk, defendant

encountered Luis Bonilla, someone with whom he had "problems" in

the past. According to defendant, Bonilla "hopped" out of his

truck and grabbed defendant by the arm. Defendant "snatched" his

arm away. He feared Bonilla had a knife in his pocket because he

knew him to carry knives. Although Bonilla never brandished a

knife, defendant flashed the handle of a BB gun. Bonilla "stopped"

and defendant put the BB gun "back in" before continuing towards

Summer Street.

 When defendant and Qua reached the intersection of Summer

Street and Park Avenue, a white Acura drove across the sidewalk

and cut them off. An unknown Spanish man, who defendant later

learned was Officer Narvaez, got out of the car with a gun in

hand. Defendant did not hear Officer Narvaez say anything, and

did not observe a badge around the officer's neck. Defendant

thought the officer was one of Bonilla's "boys." Believing he was

 5 A-0527-15T1
going to be shot, defendant ran up Park Avenue and was shot in the

back of his arm. While he ran, his BB gun fell out of his pocket.2

After he fell to the ground, Officer Narvaez placed his foot on

defendant's back. Additional officers arrived, and defendant was

transported to a local hospital for medical treatment where he

remained for six days.

 At trial, the prosecutor made several remarks which defendant

contends deprived him of a fair trial. In her opening statement,

the prosecutor said, "[w]hat is uncontested in this case [is] that

defendant does not have a permit to carry this handgun and that

defendant was in possession of this handgun." Defense counsel did

not object. Next, the prosecutor asserted Officer Narvaez and two

other law enforcement officers were "very and extremely credible

witnesses." Defense counsel objected to this statement, alleging

it was improper for the prosecutor to comment on the credibility

of her witnesses. Defense counsel did not believe a curative

instruction was an appropriate remedy and instead moved for a

mistrial. In response, the prosecutor explained she intended her

comment to explain the concept of credibility to the jury. She

suggested the judge provide a curative instruction in lieu of

declaring a mistrial.

2 Defendant testified he did not have a permit to carry the BB
gun.

 6 A-0527-15T1
 The judge denied defendant's application for a mistrial and

gave the following curative instruction:

 All right. Ladies and gentlemen . . . toward
 the end of [the prosecutor's] opening
 statement, there was a comment in terms of the
 State calling . . . three credible witnesses.
 You're to disregard that comment. It is for
 the jury to determine. As I've already
 instructed you a few moments ago, you're the
 judges of the facts and it's you, the jury,
 that is to determine the credibility of
 witnesses . . . . That's a function of the
 jury. It's not a function of the [p]rosecutor
 in this case, so you are to disregard that
 comment. What the [p]rosecutor has said in
 opening statements, as I've already told you,
 is not evidence. The evidence will come from
 the witnesses that testify as well as other
 tangible evidence and written evidence that
 may come in through the course of the trial.
 And, again, with regard to . . . credibility
 determinations, that's your role, entirely
 your role, and so you're to disregard that
 comment.

 In the prosecutor's closing statement, she argued, "Officer

Narvaez, he had no interest. His actions were reviewed by another

proceeding. He doesn't have an interest in the outcome of this

case." Defense counsel did not object to this comment.

 On appeal, defendant first contends the prosecutor's comments

during her opening and closing deprived him of a fair trial. We

disagree.

 It is well settled that "prosecutors, as lawyers, are engaged

in an oratorical profession" and given "latitude for forceful and

 7 A-0527-15T1
graphic advocacy." State v. Reddish, 181 N.J. 553, 640 (2004)

(citations omitted). As such, courts afford prosecutors

"considerable leeway" in opening and closing statements. State

v. Timmendequas, 161 N.J. 515, 577, 587 (1999), cert. denied, 534

U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). Nonetheless,

"prosecutors should not make inaccurate legal or factual

assertions during a trial and . . . must confine their comments

to evidence revealed during the trial and reasonable inferences

to be drawn from that evidence." Reddish, supra, 181 N.J. at 641

(quoting State v. Smith, 167 N.J. 158, 178 (2001)).

 A prosecutor's comments justify reversal only when they are

"clearly and unmistakably improper" and "substantially prejudice[]

defendant's fundamental right to have a jury fairly evaluate the

merits of his defense." Timmendequas, supra, 161 N.J. at 575

(citations omitted). In assessing whether a prosecutor's remarks

deprived defendant of a fair trial, courts "consider the tenor of

the trial and the responsiveness of counsel and the court to the

improprieties when they occurred." Ibid. (citing State v.

Scherzer, 301 N.J. Super. 363, 433 (App. Div.), certif. denied,

151 N.J. 466 (1997)). Thus, "an appellate court must consider (1)

whether defense counsel made timely and proper objections to the

improper remarks; (2) whether the remarks were withdrawn promptly;

and (3) whether the court ordered the remarks stricken from the

 8 A-0527-15T1
record and instructed the jury to disregard them." State v. Frost

158 N.J. 76, 83 (1999) (citations omitted).

 We turn first to the prosecutor's characterization of her law

enforcement witnesses as "very and extremely credible." This

statement was improper and the prosecutor's explanation for making

the improper remark is hardly credible. Nonetheless, we are unable

to conclude the remark deprived defendant of a fair trial.

 "A prosecutor may argue that a witness is credible but may

not personally vouch for the credibility of a State witness or

suggest that the witness's testimony has been 'checked out,'

thereby referring to matters outside the record." Scherzer, supra,

301 N.J. Super. at 445 (quoting State v. Marshall, 123 N.J. 1, 156

(1991), cert. denied, 507 U.S. 929, 113 S. Ct. 1306, 122 L. Ed.

2d 694 (1993)). See also State v. Staples, 263 N.J. Super. 602,

605 (App. Div. 1993) (stating prosecutors cannot express their own

beliefs regarding the truthfulness of their witness's testimony).

When proper curative instructions are given, however, we "act on

the belief and expectation that jurors will follow the instructions

given them by the court." State v. T.J.M., 220 N.J. 220, 237

(2015) (citations omitted). Here, the trial court gave a prompt

curative instruction.

 In addition, defendant admitted to possessing the BB gun

without a permit to carry, and the jury acquitted him of possessing

 9 A-0527-15T1
a weapon for an unlawful purpose. Defendant does not discuss how,

in view of his admission and the jury's verdict, he was deprived

of a fair trial.

 We reach the same conclusion concerning the prosecutor's

opening remark that defendant's possession of a gun was

uncontested, and the prosecutor's remarks during summation that

Officer Narvaez had no interest in the case or its outcome, and

his actions were reviewed in another proceeding.

 The prosecutor's comments concerning the officer's interest

were made in response to defendant's argument "that Narvaez also

has an interest and he has a bias and he testified before you and

we're going to look at his testimony and we're going to carefully

examine it." Defendant could not reasonably expect that the

prosecutor would not respond to the attack on the officer's

credibility.

 The prosecutor should not have stated in her opening, before

any evidence was presented, that the possessory offense was

uncontested. Her comment in summation about another proceeding

was equally improper. Nonetheless, defendant did not object to

these comments. "Generally, if no objection was made to the

improper remarks, the remarks will not be deemed prejudicial."

Timmendequas, supra, 161 N.J. at 576 (citation omitted).

 10 A-0527-15T1
Therefore, "defendant must demonstrate plain error to prevail."

Ibid. (citation omitted).

 As we previously noted, defendant admitted to the possessory

offense and the jury acquitted him of possessing a weapon for an

unlawful purpose. Considering defendant's admission, his failure

to make timely objections, and the outcome of the trial, we

conclude the prosecutor's remarks, though improper, were not

clearly capable of producing an unjust result. R. 2:10-2.

 We next turn to defendant's contention the trial court

improperly failed to sanitize his prior third-degree theft

conviction. Defendant contends the jury might infer from the

circumstances surrounding his weapons charges that he was

attempting to commit a theft and his weapons charges were thus

similar to his prior theft conviction. Based on that reasoning,

defendant argues the judge should have eliminated the substantive

word "theft" when referencing his prior conviction. In raising

this argument, defendant alleges the trial court failed to

recognize its authority to fully sanitize his conviction. We

disagree.

 "Our rules of evidence allow a witness's prior convictions

to be admitted for impeachment purposes despite the obvious

prejudice that flows from such evidence, particularly for a

criminal defendant." State v. Hamilton, 193 N.J. 255, 256 (2008);

 11 A-0527-15T1
see also N.J.R.E. 609. However, in cases where "a testifying

defendant previously has been convicted of a crime that is the

same or similar to the offense charged, the State may introduce

evidence of the defendant's prior conviction limited to the degree

of the crime and the date of the offense but excluding any evidence

of the specific crime of which [the] defendant was convicted."

State v. Brunson, 132 N.J. 377, 391 (1993). In other words,

similar prior convictions must be "sanitized," "allowing the jury

to learn only limited information about the conviction." Hamilton,

supra, 193 N.J. at 257 (citation omitted). "Sanitization protects

a defendant from the risk that a jury will be influenced by

knowledge of the prior conviction for the same or a similar offense

when determining whether to convict the defendant on the new

charge." Ibid. (citation omitted).

 Expanding upon the Brunson rule for prior similar

convictions, the Court in Hamilton held trial courts have

"discretion to consider sanitization of prior conviction evidence

in any other circumstances that posed a risk of undue prejudice

to a defendant." Id. at 269.

 Here, the trial court acknowledged it was "within the realm

of possibility" that defendant's present offense could create an

inference of theft. The judge explained that he "listened to the

[trial] testimony [and] didn't hear anything about a potential

 12 A-0527-15T1
robbery or theft." As a precaution, the judge nevertheless

sanitized defendant's prior theft conviction to the extent it

referred to a person. Thus, on direct examination, the following

colloquy occurred between defendant and his attorney:

 [Defense Counsel:] Now, [defendant], you were
 convicted of the crime of theft on July [29],
 2011 and you received time served, 737 days
 in the Passaic County Jail, is that correct?

 [Defendant:] Yes.

 Because no witness suggested defendant attempted to rob

Bonilla, it is difficult to conceive how jurors would have drawn

an inference that defendant's weapons offenses were similar to a

theft. For that reason, and for those previously explained

concerning the jury's verdict, the judge's error, if any, was

harmless. R. 2:10-2.

 Lastly, defendant challenges his sentence as excessive and

contends the trial judge abused his discretion by imposing a period

of parole ineligibility under N.J.S.A. 2C:43-6(b). Defendant

argues the judge unjustifiably relied upon aggravating factors

three, the risk that defendant will commit another offense,

N.J.S.A. 2C:44-1(3); and six, the extent of defendant's prior

criminal record and the seriousness of his present convictions,

N.J.S.A. 2C:44-1(6).

 13 A-0527-15T1
 An appellate court reviews a sentence under a deferential

standard. State v. Fuentes, 217 N.J. 57, 70 (2014). Under that

standard, "[a]n appellate court is bound to affirm a sentence,

even if it would have arrived at a different result, as long as

the trial court properly identifies and balances aggravating and

mitigating factors that are supported by competent credible

evidence in the record." State v. O'Donnell, 117 N.J. 210, 215

(1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989)).

 Here, the trial judge found aggravating factor three based

on defendant's prior juvenile and municipal CDS offenses, his

prior indictable theft conviction, his drug use and marijuana

abuse, and his failure to complete school or maintain employment.

The judge found aggravating factor six because he believed

defendant's present conviction was serious, "notwithstanding that

it[] [involved] a BB gun." The judge also based aggravating factor

six on defendant's criminal record. From the judge's thorough

review of defendant's circumstances at sentencing, we find no

abuse of discretion in the decision to consider aggravating factors

three and six. The judge's findings are amply supported by the

record.

 Regarding defendant's period of parole ineligibility, "[t]he

sentencing court, when 'clearly convinced that the aggravating

factors substantially outweigh the mitigating factors,' may

 14 A-0527-15T1
sentence a defendant to 'a minimum term not to exceed one-half of

the term' allowed by the statute." State v. Case, 220 N.J. 49,

65-66 (2014) (quoting N.J.S.A. 2C:43-6(b)). In imposing such a

sentence, "the court must 'specifically place on the record the

aggravating factors . . . which justify the imposition of a minimum

term.'" Id. at 66 (quoting N.J.S.A. 2C:44-1(f)(1)).

 Here, the trial judge thoroughly explained his reasons for

finding the aggravating factors, and was "clearly convinced that

the aggravating factors substantially outweigh[ed] any non-

existent mitigating factors." He properly exercised his

discretion by imposing a minimum term that did not exceed one-half

of defendant's overall custodial sentence.

 Affirmed.

 15 A-0527-15T1