**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3084-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CARLTON L. BAILEY a/k/a
KARLTON L. BAILEY,

    Defendant—Appellant.

_____

Submitted November 2, 2016 — Decided December 4, 2017

Before Judges Fuentes and Gooden Brown.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Indictment No.
14-10-1112.

Joseph E. Krakora, Public Defender, attorney
for appellant (Michele A. Adubato, Designated
Counsel, on the brief).

Andrew C. Carey, Middlesex County Prosecutor,
attorney for respondent (Joie Piderit,
Assistant Prosecutor, of counsel and on the
brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

Following a jury trial, defendant was convicted of third-degree attempted escape, N.J.S.A. 2C:5-1 and 2C:29-5; third-degree possession of escape implements, N.J.S.A. 2C:29-6; and fourth-degree unlawful possession of a weapon, namely, a screw, N.J.S.A. 2C:39-5(d).[1] He was acquitted of third-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(d). Defendant was sentenced as a persistent offender, N.J.S.A. 2C:43-7 and 2C:44-3(a), to an aggregate extended term of seven years' imprisonment, with a two-year period of parole ineligibility, to run consecutively to a seventeen-year sentence with a five-year period of parole ineligibility for an unrelated conviction.

On appeal, defendant raises the following contentions:

POINT I

THE PROSECUTOR'S IMPEACHMENT OF DEFENSE WITNESSES BY THE USE OF UNSANITIZED PRIOR CONVICTIONS IN THIS CASE WAS GROSSLY IMPROPER AND DEPRIVED DEFENDANT OF A FAIR TRIAL. (NOT RAISED BELOW).

---

[1] The indictment alleged that defendant employed "a screw and/or a shank" in the commission of the crimes, elevating the attempted escape and the possession of escape implements offenses to second-degree crimes. However, at the close of the State's case, the trial court granted defendant's motion for a judgment of acquittal, R. 3:18-1, and amended the indictment accordingly because the State failed to establish any connection between defendant and "a shank[.]" As a result, the charges submitted to the jury made no mention of a shank. The jury found defendant guilty of the crimes, but did not find that defendant used "a deadly weapon or dangerous instrumentality to effect the attempted escape" or "possessed . . . a deadly weapon[,]" resulting in third-degree convictions for both crimes. See N.J.S.A. 2C:29-5(e) and N.J.S.A. 2C:29-6(a).

2                                                              A-3084-14T3

POINT II

THE EXTENDED TERM SENTENCE IMPOSED UPON
[DEFENDANT] OF [SEVEN] YEARS WITH [TWO] YEARS
OF PAROLE INELIGIBILITY[,] CONSECUTIVE TO
ANOTHER SENTENCE[,] WAS EXCESSIVE AND MUST BE
MODIFIED AND REDUCED.  (NOT RAISED BELOW).

After considering the arguments presented in light of the record and applicable law, we affirm.

We summarize the pertinent facts from the trial record.  The State's proofs at trial demonstrated that defendant was involved with three other inmates in a plot to escape from the Middlesex County Jail, where he was awaiting sentencing.  The plot also involved inmate Steven Devine, along with his cellmate, Scott Hornick, and defendant's cellmate, Eugene Hollins.

On May 3, 2013, Devine informed authorities about the plot, in hopes of obtaining leniency.  According to Devine, the plot was Hornick's idea, and defendant "was the muscle" of the operation. Following Devine's disclosure, a team of corrections officers searched the inmates and the unit.  In one of defendant's socks, officers found a screw with "masking tape wrapped around the top[.]"  Inmates were not allowed to have screws in the jail because they could be used as weapons.

In addition, in defendant's cell, the officers discovered that the "window frame had been partially cut through[,]" and

there was a gouge "right in the middle of it" that went "almost completely through the metal." A piece of masking tape was placed over the gouge and painted with blue paint to match the rest of the windowsill. Under the desk in defendant's cell, the officers found "some tape" and a "[m]ilk of [m]agnesia bottle full of blue paint" that matched the window frame. Around that time, the jail was being painted for an inspection, and certain inmates were helping with the painting.

When the officers compared the screw found in defendant's sock "to the gouge in the window[,]" they discovered that the gouge was "the same depth and width of the screw," and that the screw "fit right into the groove." It was later determined that the screw "came from the back plate that was holding one of the phones in the unit to the wall." The phone was located "a couple of doors away" from defendant's cell.

Four inmates testified on defendant's behalf: Devine, Hollins, Frank Ferraro, and Michael Barcalow. Devine admitted informing the authorities about the escape plot in exchange for a lesser sentence on his then pending charges for armed robbery, burglary, drug possession, and resisting arrest. Devine was ultimately sentenced to Drug Court instead of prison. Devine described the plot in detail, including their plan to carjack cars once they escaped the jail. According to Devine, both Hornick and

defendant had screws; Hornick did some of the "etching . . . at the window" in defendant's cell while he (Devine) and defendant played cards.

Hollins denied being involved in the escape plot and denied seeing defendant "messing with the window in [their] cell[.]" Ferraro, who was housed in the adjacent cell, testified that, although his cell shared a window with defendant's, he never heard any noises coming from that window or noticed the window moving.

The trial court qualified Barcalow, an inmate at a different facility, as an expert on tattooing in jail.[2] He testified that "a screw[,]" like the one seized from defendant's sock, could be used for tattooing. Both Hollins and Ferraro acknowledged seeing defendant tattoo other inmates. Hollins testified that defendant had "darkened [his] tattoo for [him]" using "a tack" or "something like a nail."

Following the guilty verdict, the trial court granted the State's motion for an extended term, treated defendant as a persistent offender pursuant to N.J.S.A. 2C:44-3(a), and sentenced defendant to a term of seven years with a two-year period of parole ineligibility for the attempted escape conviction, to run consecutively to the sentence defendant was then serving. The

---

[2] Barcalow admitted that tattooing in jail was a disciplinary infraction. See N.J.A.C. 10A:4-4.1, .653.

court imposed a concurrent eighteen-month term for the unlawful possession of a weapon conviction and merged the possession of escape implements conviction into the attempted escape conviction. A memorializing judgment of conviction was entered on February 11, 2015, and this appeal followed.

Defendant argues for the first time on appeal that the court erred in admitting without sanitization the prior convictions of the three inmates who testified on his behalf. Defendant argues "[t]he nature of the prior convictions was not[] relevant nor material[] to the credibility issue[,]" and the prosecutor's sole purpose "was to show each witness as a 'bad person' and prejudice the defendant."

Because defendant did not raise this objection before the trial court, we review his argument under the "plain error" standard, which mandates reversal only for errors "of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2; see also State v. Maloney, 216 N.J. 91, 104 (2013). The test is whether the possibility of injustice is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

N.J.R.E. 609 provides that "[f]or the purpose of affecting the credibility of any witness, the witness's conviction of a

crime, subject to [N.J.R.E.] 403, must be admitted unless excluded by the judge" as remote or for other causes. Whether to admit evidence of a prior conviction "rests within the sound discretion of the trial judge[,]" State v. Sands, 76 N.J. 127, 144 (1978), and we should not reverse the decision absent an abuse of discretion reflecting clear error of judgment. State v. Harris, 209 N.J. 431, 439 (2012).

Sanitization of prior convictions is appropriate when "a testifying defendant previously has been convicted of a crime that is the same or similar to the offense charged[.]" State v. Brunson, 132 N.J. 377, 391 (1993). The Supreme Court expanded the Brunson rule for prior similar convictions in State v. Hamilton, 193 N.J. 255, 269 (2008). The Court held that trial courts have "discretion to consider sanitization of prior[-]conviction evidence in any other circumstance that pose[s] a risk of undue prejudice to a defendant." Id. at 269. In such circumstances, sanitization limits the prosecutor to mentioning the date, degree of the prior conviction, and sentence, "but excluding any evidence of the specific crime of which defendant was convicted." Brunson, supra, 132 N.J. at 391; see also N.J.R.E. 609.

Here, without objection, the prosecutor cross-examined Hollins on three 2013 convictions, consisting of one second-degree witness tampering offense and two third-degree drug offenses, for

which he received an aggregate seven-year sentence. As to Ferraro and Barcalow, the court conducted a Sands hearing to determine the admissibility of their prior convictions.

Ferraro had seven prior convictions, spanning 1995 to 2013. Without objection from defense counsel, the court permitted cross-examination only on the 2013 convictions, third-degree criminal restraint and second-degree possession of a firearm for an unlawful purpose, for which Ferraro received an aggregate seven-year sentence. Weighing the N.J.R.E. 609 factors, the court determined that the convictions "beyond the ten[-]year mark" were "presumptively remote" and unduly prejudicial.

Barcalow had seventeen prior convictions, with the earliest occurring in 1996 and the latest in 2005. The court permitted cross-examination on eleven of Barcalow's prior convictions. Again, the court determined that "everything else" would be too "remote" and "too prejudicial[.]" At trial, Barcalow was cross-examined on four contempt convictions, two harassment convictions, and two stalking convictions for which he received ten years in prison in 2005. He was also cross-examined on a 2005 fourth-degree resisting arrest conviction, a 2002 third-degree drug possession conviction, and a 2001 second-degree eluding conviction for which he received a five-year prison sentence.

A-3084-14T3

We discern no abuse of discretion by the court in making these evidentiary rulings. Moreover, because defendant did not object to the use of the un-sanitized convictions, we are satisfied that there was no error, much less plain error.

Next, defendant challenges his sentence as excessive, arguing the "[c]ourt failed to do a separate analysis of the aggravating and mitigating factors as required by law before imposing the extended term and consecutive sentence." We disagree.

"Appellate review of the length of a sentence is limited." State v. Miller, 205 N.J. 109, 127 (2011). We will

> [A]ffirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

When evaluating whether to impose an extended custodial term and, if appropriate, the length of that term, sentencing courts follow a four-step process: (1) determine whether the minimum statutory predicates are met; (2) decide whether to impose an extended term; (3) weigh aggravating and mitigating factors to determine the base term of the extended sentence; and (4) determine

whether to impose a parole ineligibility period. See State v. Pierce, 188 N.J. 155, 164 (2006). "Choosing whether to impose the extended term requires consideration of the need for public protection." State v. Dunbar, 108 N.J. 80, 95 (1987). Further, though the conduct underlying the current offense is of primary importance in determining the length of the extended term, "other aspects of the defendant's record, which are not among the minimal conditions for determining persistent offender status, such as a juvenile record, parole or probation records, and overall response to prior attempts at rehabilitation, will be relevant factors in adjusting the base extended term." Id. at 92.

"[T]he decision to impose consecutive or concurrent sentences rests in the first instance with the trial court." Miller, supra, 205 N.J. at 130; see also N.J.S.A. 2C:44-5(a). Our Supreme Court has set forth "general sentencing guidelines for concurrent or consecutive-sentencing decisions (including any parole ineligibility feature) when [a] sentence is pronounced on one occasion on an offender who has engaged in a pattern of behavior constituting a series of separate offenses or committed multiple offenses in separate, unrelated episodes." State v. Yarbough, 100 N.J. 627, 644 (1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986).

Here, the court correctly determined that "[defendant] qualifie[d] to be sentenced as a persistent offender" based upon his record of twelve prior indictable convictions. Defendant does not appear to dispute that determination. The court then appropriately pointed out several important considerations bearing on its sentencing analysis and its conclusion that aggravating factors three, six, and nine applied. N.J.S.A. 2C:44-1(a)(3); N.J.S.A. 2C:44-1(a)(6); N.J.S.A. 2C:44-1(a)(9). Specifically, the court noted the "substantial risk that [defendant] will commit another offense[,]" given defendant's lengthy juvenile and adult criminal history and unsuccessful prior attempts at rehabilitation; "the seriousness of the offenses," including prior first-degree and weapons-related convictions; and the need "to strongly discourage" attempted escapes from penal institutions, as these "implicitly" pose "the threat of harm."

The court found no mitigating factors, specifically rejecting defendant's arguments regarding mitigating factors one, N.J.S.A. 2C:44-1(b)(1); two, N.J.S.A. 2C:44-1(b)(2); and eight, N.J.S.A. 2C:44-1(b)(8). The court found that "attempting to escape from a penal institution implicitly threatens serious harm" and "goes against the good order and discipline of the penal institution." Further, because defendant's motive for the crime was to avoid a

"long sentence[,]" the incentive to re-offend would be "even greater" now with the further extension of his sentence.

The court concluded that the need for deterrence "was one of the primary reasons why the [c]ourt [found] that a persistent offender extended term sentence [was] appropriate in this case." Further, the fact that defendant "was seeking to escape a penal institution after having previously been convicted of several serious charges that, at the time, [were] going to result in a substantial sentence" justified a consecutive sentence under the criteria articulated in Yarbough, supra. As the court followed the sentencing guidelines, made findings that are supported by the record, and did not impose a sentence that shocks the judicial conscience, we decline to disturb it.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12                                                    A-3084-14T3