Submitted on record and briefs April 16, affirmed June 11, 1997

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL EDWARD DISHMAN III,
*Appellant.*

(951238830; CA A92529)

939 P2d 1172

Raymond Tindell filed the brief for appellant.

Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Pilar C. French, Assistant Attorney General, filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

Defendant appeals from his conviction for second-degree robbery. ORS 164.405. We write only to address defendant's contention that the trial court erred by permitting the state to introduce into evidence certified copies of defendant's prior convictions for robbery and burglary in the second degree. We affirm.

On December 2, 1995, defendant and Jason McQueen went into a Portland convenience store. Defendant spoke to the store clerk at the check-out counter while McQueen walked throughout the store. McQueen subsequently flashed something with a brass handle at the clerk, came to the counter and demanded that the clerk put cigarettes and money into a plastic garbage bag he had taken from a shelf. At that point, defendant left the store, claiming that he had "nothing to do with it." Sometime later, police officers discovered defendant, McQueen and another man in a truck nearby. In a consent search of the truck, the officers found the garbage bag containing cigarettes, money and food stamps. Defendant was charged with first- and second-degree robbery.

Defendant did not testify at trial, but he did offer the testimony of Detective Timothy Sukimoto, who interviewed defendant the night he was arrested. Sukimoto testified that, during that interview, defendant stated that he had no idea that McQueen was going to rob the store, that defendant had not wanted anything to do with the robbery and that defendant was willing to testify against McQueen because McQueen was the mastermind behind the plot to rob the store. During the state's cross-examination, the prosecutor asked Sukimoto if he knew whether defendant had been convicted of any felonies within the previous 15 years. Defense counsel objected to that question. The trial court, relying on OEC 806, ruled that defendant's questioning of Sukimoto had "opened the door" to the admission of defendant's prior convictions. The trial court then admitted into evidence certified copies of defendant's three prior convictions.

On appeal, defendant contends that evidence of his prior convictions was improperly admitted and "taints the

entire conviction," because he never testified and "OEC 609 allows impeachment by evidence of conviction of a crime, but only [of] a witness [who] actually takes the witness stand and testifies at trial."[1] The state responds that defendant's choice not to testify does not by itself render the evidence of his prior convictions inadmissible and that the evidence of those convictions was admissible under OEC 806, which provides:

> "When a hearsay statement, or a statement defined in [OEC 801(4)(b)(C), (D), or (E)], has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if the declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the hearsay statement of the declarant, is not subject to any requirement under [OEC 613] relating to impeachment by evidence of inconsistent statements. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination."

We have not previously examined OEC 806 in the context of the facts presented by this case, namely, the state's use of prior convictions to impeach hearsay statements made by a nontestifying defendant. Through his questioning of Sukimoto, defendant was able to introduce into evidence hearsay[2] statements that were favorable to defendant. It is well established that the function of OEC 806 is to allow

---

[1] Defendant argues that the evidence of his prior convictions was not admissible under OEC 609, because its probative value is substantially outweighed by the prejudice to defendant. We will not consider that issue, because it is raised for the first time on appeal. *State v. Engweiler*, 118 Or App 132, 135, 846 P2d 1163, *rev den* 317 Or 486 (1993). Defendant also argues that his state and federal constitutional rights to testify, present evidence and have a fair trial were violated. Again, we decline to address those arguments, because they were not raised below. ORAP 5.45(2); *see State v. Busby*, 315 Or 292, 294, 844 P2d 897 (1993) (a defendant may not attack OEC 609, relating to impeachment by certain prior convictions, as violative of constitutional protections without demonstrating how the operation of the rule in the defendant's case prevented or diminished his enjoyment of those protections).

[2] OEC 801(3) defines "hearsay" as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." It is clear from the context of the record that defendant's statements were offered to prove the truth of the matter asserted: that defendant did not know that McQueen was going to rob the convenience store and thus was innocent of the crimes charged.

impeachment of a hearsay declarant just as if the declarant had testified as a witness. *State v. Phillips*, 314 Or 460, 468, 840 P2d 666 (1992).

■　　Reduced to its core, defendant's argument is that, because he exercised his constitutional right not to testify, the state could not under any circumstances present impeachment evidence. Defendant cites no authority for that proposition, and Oregon law contains no such limitation. Impeachment of a hearsay declarant, even if that declarant is a criminal defendant, is permissible. As Kirkpatrick explains in *Oregon Evidence*:

> "Rule 806 creates a potential trap for a defense attorney who introduces out-of-court statements of the defendant in a case where the defendant does not take the stand. By introducing the defendant's earlier statements, the defendant becomes subject to impeachment under Rule 806 and defendant's prior criminal convictions may be received, to the extent they are admissible for impeachment under Rule 609."

Laird C. Kirkpatrick, *Oregon Evidence* 631 (3d ed 1996).[3]

Defendant's strategy at trial was to introduce the out-of-court statements he made to Sukimoto in an effort to establish that defendant did not intend to commit robbery. Introduction of defendant's prior felony convictions was a valid method of impeaching the credibility of those statements. The trial court did not err in admitting into evidence certified copies of defendant's prior felony convictions.

Affirmed.

---

[3] Several federal cases interpret FRE 806, the parallel provision in the Federal Rules of Evidence. *See, e.g., United States v. Newman*, 849 F2d 156, 162-63 (5th Cir 1988) (where defense counsel questioned numerous witnesses about out-of-court statements that the defendant had made to them, FRE 806 permits impeachment of nontestifying criminal defendant through introduction of the defendant's prior criminal convictions); *United States v. Bovain*, 708 F2d 606, 613-14 (11th Cir), *cert den sub nom Brown v. United States*, 464 US 898 (1983) (certified record of nontestifying defendant's prior criminal convictions admissible for impeachment purposes, where another witness has testified previously about the defendant's out-of-court statements); *United States v. Lawson*, 608 F2d 1129 (6th Cir 1979), *cert den* 444 US 1091 (1980) (where defense counsel cross-examines a government witness to bring out the defendant's consistent denial of involvement in the crimes charged, prosecution can impeach the defendant by introducing evidence of his prior convictions pursuant to FRE 806 and FRE 609).