NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1307-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

THOMAS H. OUTLAND, a/k/a
THOMAS GO OUTLAND,
ISLAM GOODWIN, and
THOMAS H. JAMISON,

     Defendant-Appellant.

APPROVED FOR PUBLICATION

March 20, 2019

APPELLATE DIVISION

Submitted November 8, 2018 – Decided March 20, 2019

Before Judges Alvarez, Nugent, and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-08-0751.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

Tried to a jury, defendant Thomas H. Outland was found guilty of second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1, and second-degree robbery, N.J.S.A. 2C:15-1.[1] After merging the convictions, the trial judge sentenced defendant to a sixteen-year extended term as a persistent offender subject to the No Early Release Act. N.J.S.A. 2C:43-7.2; N.J.S.A. 2C:44-3(a). Defendant appeals and we affirm.

We glean the facts from the trial record. Defendant worked next door to a check cashing establishment and often took coffee in the morning to Claudia Cardenas, the check cashing employee. She worked in the rear where the safety deposit box was located, protected by a system of two security doors. Exterior video footage taken on the date of the robbery, April 30, 2014, depicts defendant[2] walking towards and joining two hooded figures while holding a white object, similar in appearance to a paper cup. The group moves together towards the check cashing store and disappears inside. Moments later, the two hooded figures run out. Shortly thereafter, police cars arrive.

---

[1] The jury acquitted defendant of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7).

[2] Defendant did not testify at trial, but identified himself on the video in a recorded statement he made to police. The relevant portion of the statement was played at trial.

Cardenas testified that on the morning of the robbery, defendant called in to her, and, as was her custom, she unlocked the outer security door to get the coffee. As she did so, a man forced the second security door open and punched her. She saw another man; both of their faces were covered by hoodies. Cardenas was punched in the face again and pushed down onto the floor. Approximately $35,000 was taken from the safe.

When she next raised her head, Cardenas saw defendant near the door. She asked him to call the police, and he told her to calm down because the men were dangerous. A customer entered the store, and Cardenas again asked defendant to call 9-1-1, which he did.

After the State rested, defendant moved the 9-1-1 recording into evidence and played the tape to the jury. Over the State's objection, the judge found the tape admissible as a present sense impression exception to the hearsay rule, N.J.R.E. 803(c)(1), and the excited utterance exception, N.J.R.E. 803(c)(2). The judge also ruled that if defendant played the tape to the jury, in rebuttal the State could play redacted portions of defendant's two recorded statements to police, and proffer his prior convictions.

Defense counsel played the 9-1-1 tape. In rebuttal, the State moved into evidence defendant's sanitized criminal history of four prior indictable offenses and service of state prison time, and the two redacted statements.

In the statements, defendant denied culpability, but discussed in detail how easy it would be to plan a robbery at the check cashing store because the employees were so "lax" about security, and their patterns of behavior so well established. He added, "if it was me and I knew that she opened the door like that, I could plan. I know how to plan around shit[.]"

Defendant raises the following points for our consideration:

> POINT I
> AFTER THE STATE'S WITNESS TESTIFIED THAT SHE DID NOT SEE DEFENDANT CALL [9-1-1] ON THIRD-PARTY PERPETRATORS, [DEFENDANT] CHOSE NOT TO TESTIFY, BUT COUNTERED ONLY WITH PROOF THAT HE <u>HAD</u> CALLED [9-1-1]. THE COURT ERRED BY PERMITTING THE PROSECUTOR TO THEN INFORM THE JURY THAT [DEFENDANT] HAD FOUR PRIOR FELONY CONVICTIONS. <u>U.S. Const.</u>, Amends. V, XIV; <u>N.J. Const.</u>, Art. 1, Pars. 1, 9, 10.
>
> > A. [D]efendant's [9-1-1] call was not hearsay because it was offered not for the truth of the statements therein but to disprove the testimony of the State's witness that . . . defendant had <u>not</u> called [9-1-1]. N.J.R.E. 806, which permits an opposing party to attack hearsay, was thus inapplicable.
> >
> > B. Regardless of the applicability of N.J.R.E. 806, the trial judge should have excluded the prior convictions under N.J.R.E. 403.
> >
> > C. Regardless of the applicability of N.J.R.E. 806, the trial judge should have excluded the prior convictions under N.J.R.E. 404(b).

D. The trial court's limiting instruction was inadequate because it contradicted itself on whether the jury could impermissibly use the prior convictions as propensity evidence, to conclude that the [9-1-1] call was a part of a conspiracy by . . . defendant.

I.

"Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings." State v. Morton, 155 N.J. 383, 453 (1998). The trial judge's rulings will be upheld "absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)); see also State v. Fortin, 189 N.J. 579, 597 (2007). Even if there is an abuse of discretion, we "must then determine whether any error found is harmless or requires reversal." State v. Prall, 231 N.J. 567, 581 (2018). Except for the challenge to the judge's limiting instruction, all defendant's claims of error concern the judge's evidentiary rulings regarding hearsay.

A-1307-16T3

II.

"Hearsay is generally inadmissible, N.J.R.E. 802, except if it falls within one of the hearsay exceptions." State v. Williams, 169 N.J. 349, 358 (2001) (citing State v. Phelps, 96 N.J. 500, 508 (1984)). Statements that qualify as a present sense impression, N.J.R.E. 803(c)(1), or an excited utterance, N.J.R.E. 803(c)(2), are two such exceptions. See Prall, 231 N.J. at 585; Gonzales v. Hugelmeyer, 441 N.J. Super. 451, 458 (App. Div. 2015).

Where a party introduces hearsay, the declarant's credibility becomes an issue. Thus, N.J.R.E. 806 permits the admission of evidence impeaching the credibility of the hearsay declarant.

Defendant contends that the 9-1-1 call was not hearsay, on the basis that it was moved into evidence solely to disprove Cardenas's testimony that defendant had not called 9-1-1. From that premise, defendant argues that defendant's prior criminal history should have been excluded as the rules do not permit impeachment of a declarant's non-hearsay statements. The premise, however, is not supported by the record. Cardenas did not deny that defendant called police—she only said that she asked him to do so and did not see him place the call.

The judge observed the call could be construed as:

> a bona fide excited utterance, present sense impression, or a premeditated attempt by . . .

defendant to distan[ce] himself from his co-conspirators/princip[als]. If . . . defendant was not a conspirator/accomplice the call certainly qualifies under 803(c)(1) and (c)(2). The call was made within two minutes of the robbery. . . . [D]efendant requested police assistance at the check cashing store explaining that a robbery had just occurred, an event which both sides agree . . . defendant had perceived. Likewise defendant's call related to a startling event, that is the robbery. Defendant's voice indicated that he was still under the stress or excitement caused by the robbery. [] Cardenas's distraught crying and moaning in the background of the [9-1-1] call is certainly evidence that the robbery was still fresh in the minds of both she and . . . defendant.

We agree. Trial counsel sought to have the tape admitted so the jury could hear defendant's tone and manner as evidence of his innocence. Defendant wanted the jury to hear him, not to establish that a robbery occurred, but rather to demonstrate that he made a genuine 9-1-1 call as would any bystander or victim—and the trial judge agreed, after hearing it, that on the tape defendant sounded "excited and unreflective."

Defendant played the recording to disprove any involvement in the conspiracy to commit the robbery. He wanted to proffer his distressed-sounding voice, recorded outside the courtroom, "to prove the truth of the matter asserted"—his innocence. See N.J.R.E. 801(c). "[T]he matter asserted" was not the event, but his lack of prior knowledge about it. Playing the tape

for the jury to hear was, in effect, equivalent to making an assertion of innocence from the witness box.

After ruling that the call was admissible as an exception to the hearsay rule, the judge went on to state that although defendant, obviously, could not be subjected to cross-examination, the State would be "afforded the opportunity to offer evidence regarding the credibility of the call using relevant portions of any prior voluntary statement made by . . . defendant pursuant to [N.J.R.E.] 803(b)(1) and [N.J.R.E.] 806, and by his prior convictions under [N.J.R.E.] 806." By doing so, the court acknowledged the State's theory that the 9-1-1 call was, far from innocently made, designed to exonerate defendant from involvement in the robbery. In other words, that "defendant's excitement was contrived and he certainly had both the opportunity and motive to plan the call to [9-1-1] in a fabricated effort to portray himself as a victim and not a participant[.]"

The judge observed that the tension between these conflicting interpretations of the evidence made its admission "unique." He had to "resolve the conflict between [the] duty to make the factual findings regarding the admissibility of the [9-1-1] call as comporting with two particular rules of evidence, and the ultimate issue that must be addressed by the jury." Having concluded that the 9-1-1 call was admissible under the relevant exceptions to

8

the hearsay rule, the judge said he would "not invade the province of the jury" by deciding whether the 9-1-1 tape was proof of the conspiracy to rob.

The judge also reminded trial counsel to review the decision with his client, to ensure defendant understood the patent risks of the jury hearing his criminal history and recorded statements. In addition, the judge indicated he would charge the jury regarding defendant's credibility along with the manner in which it should weigh and consider "the [9-1-1] call[] [as] a statement of defendant."

In sum, the judge framed the issue as follows. On the one hand, defendant sought admission of the 9-1-1 tape as either an excited utterance or present sense impression exception to the hearsay rule to corroborate that his presence at the moment of the robbery was mere happenstance. In that light, the call was a hearsay statement in which defendant claimed his innocence.

On the other hand, the State contended that the tape should not be admitted because the call was merely a step in the conspiracy, and necessary for defendant to advance the commission of the crime. Since defendant's purpose in admitting the tape was testimonial, his conviction history could be revealed to the jury, along with the redacted statements, which the State considered inculpatory.

A-1307-16T3

The judge based his decision on N.J.R.E. 806, which states: "the credibility of [a hearsay] declarant may be attacked, and if attacked may be supported, by _any_ evidence which would be admissible for those purposes if the declarant had testified as a witness." (emphasis added). The comment following the rule states:

> The Rule makes it clear that the credibility of a declarant is subject to attack when his statement is admitted by virtue of an exception to the hearsay exclusionary rule. . . .
>
> The Rule permits impeachment or support of a declarant's credibility as if the declarant had been a witness. This would permit, for example, a statement introduced under an exception to the hearsay rule to be impeached by evidence that the declarant had been convicted of a crime[.] (N.J.S.[A.] 2A:81-12).
>
> [Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. on N.J.R.E. 806 (2018) (emphasis added).]

Federal Rule of Evidence 806 precedes and is the prototype for N.J.R.E. 806, upon which the trial judge properly relied. Ibid. Under Federal Rule of Evidence 806, federal courts have allowed the admission of prior convictions to impeach the credibility of a hearsay declarant. In United States v. Greenidge, the Third Circuit held the trial court appropriately admitted the non-testifying defendant's prior convictions to impeach his credibility after he offered his own out-of-court statements as evidence. 495 F.3d 87, 97-98 (3d

Cir. 2007). The Third Circuit also ruled the district court had appropriately weighed the probative value of the prior convictions against the prejudicial effect, as required by Federal Rule of Evidence 609. Id. at 97-98.

Similarly, in United States v. Noble, the court allowed the prosecution to move into evidence the non-testifying defendant's prior conviction to impeach his statements on a recorded conversation between him and an agent. 754 F.2d 1324, 1335-36 (7th Cir. 1985). The court stated that by introducing the tape, defense counsel "opened the door for the government to introduce his prior conviction under [Federal Rules of Evidence] 806 and 609(a)(2)." Id. at 1336; see also United States v. Uvino, 590 F. Supp. 2d 372 (E.D.N.Y. 2008) (permitting defendants to introduce prior dishonest acts of hearsay declarants to impeach exclamations they made on a taped recording while they were being assaulted and robbed).

Other state courts have permitted prosecutors to impeach the credibility of hearsay declarants through prior convictions. For example, in State v. Hernandez, the prosecutor sought to admit the defendant's prior convictions to impeach the excited utterances the defendant made on a 9-1-1 call. 959 P.2d 810, 813-17 (Ariz. Ct. App. 1998). After committing murder, the defendant called 9-1-1 and turned himself in. Id. at 813. The defendant did not testify at trial; however, he admitted the 9-1-1 tape into evidence to prove that the

murder was not premeditated.  <u>Ibid.</u>  The court ruled that the prior convictions were appropriately admitted because "[a]dvising the jurors of the declarant's prior felony convictions aids them in assessing the trustworthiness of the declarant's statement."  <u>Id.</u> at 814.  It was immaterial that the declarant was the defendant himself.  <u>Id.</u> at 815-17.

More recently, in <u>State v. Mohamed</u>, the Supreme Court of Washington permitted a non-testifying defendant to be impeached through his prior convictions where his out-of-court statements were relayed through the defendant's expert witness' testimony.  375 P.3d 1068, 1072 (Wash. 2016).  This is because "[t]he record shows that the defendant's statements were not offered <u>solely</u> for the nonhearsay purpose of providing the factual basis for [the witness'] expert opinion; they were <u>also</u> offered for the hearsay purpose of proving their truth."  <u>Ibid.</u> (emphasis in original); <u>see also</u> <u>Mathis v. State</u>, 135 So. 3d 484, 485 (Fla. Dist. Ct. App. 2014); <u>People v. Jacobs</u>, 78 Cal. App. 4th 1444, 1449 (Ct. App. 2000); <u>State v. Dishman</u>, 939 P.2d 1172, 1174 (Or. Ct. App. 1997).

The comment following N.J.R.E. 806 embodies the prevailing view.  In evaluating the credibility of hearsay, a jury should be entitled to hear the same impeaching evidence as if the declarant had testified.  The trial court did not

12                                                                 A-1307-16T3

err by allowing the State to proffer defendant's prior convictions in order to impeach his credibility.

III.

Defendant also contends that regardless of whether admission of the prior conviction history was proper under N.J.R.E. 806, the judge should have excluded the prior criminal history under N.J.R.E. 403.[3] N.J.R.E. 403 provides:

> Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence.

"The purpose of [an N.J.R.E.] 403 balancing is to determine whether the risk of prejudice to defendant in admitting the . . . evidence outweighs its probative worth." State v. Long, 173 N.J. 138, 161 (2002); see also Brenman v. Demello, 191 N.J. 18, 34-35 (2007); State v. Sheppard, 437 N.J. Super. 171, 192 (App. Div. 2014). "The trial judge has broad discretion to exclude evidence as unduly prejudicial pursuant to N.J.R.E. 403." State v. Nantambu, 221 N.J. 390, 402 (2015). "[T]he more attenuated and the less probative the

---

[3] Defendant argues that the State's admission of defendant's prior convictions violated both N.J.R.E. 403 and 404(b). N.J.R.E. 404(b) generally prohibits the admission of other crimes, wrongs, or acts. An analysis pursuant to N.J.R.E. 404(b) and State v. Cofield, 127 N.J. 328 (1992), is unnecessary.

13

evidence, the more appropriate it is for a judge to exclude it" under N.J.R.E. 403. State v. Medina, 201 N.J. Super. 565, 580 (App. Div. 1985).

However, "[t]he mere possibility that evidence could be prejudicial does not justify its exclusion." Morton, 155 N.J. at 453–54. "Even when evidence is 'highly damaging' to a defendant's case, 'this cannot by itself be a reason to exclude otherwise admissible and probative evidence.'" State v. Brockington, 439 N.J. Super. 311, 333 (App. Div. 2015) (quoting State v. Frost, 242 N.J. Super. 601, 620-21 (App. Div. 1990)). Evidence is excluded for being unduly prejudicial only when its "'probative value is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation' of the issues in the case." State v. Koskovich, 168 N.J. 448, 486 (2001) (alteration in original) (quoting State v. Thompson, 59 N.J. 396, 421 (1971)).

To exclude evidence under N.J.R.E. 403, the prejudice must substantially outweigh the probative value. Ibid.; see also State v. Reddish, 181 N.J. 553, 608-09 (2004).

Prior-conviction evidence carries the potential for "severe and unfair prejudice" to a criminal defendant. State v. Hamilton, 193 N.J. 255, 264 (2008). "The danger of conviction evidence is its capacity to prove a defendant's criminal propensity, turning a jury away from a proper

consideration of the evidence." Ibid. (citing State v. Sands, 76 N.J. 127, 141 (1978)). "The prejudice inherent in other-crimes evidence, even when it is probative of a fact in issue, is that a jury, on hearing that evidence, may be influenced to return a guilty verdict because it considers the defendant to be a criminal." State v. Brunson, 132 N.J. 377, 384 (1993).

Even where prior convictions are admitted only for impeachment purposes, their "inflammatory nature" may still unduly influence a jury. Ibid. "[T]rial courts retain discretion to prevent the occurrence of undue prejudice from prior-conviction evidence." Hamilton, 193 N.J. at 256-57. So, for example, "[p]rior-conviction evidence may be excluded when the evidence's 'probative force because of its remoteness, . . . is substantially outweighed so that its admission will create undue prejudice.'" Id. at 263-64 (quoting Sands, 76 N.J. at 147).

By playing the tape to the jury, however, defendant avoided the riskier process of testifying, while ensuring that the jury heard the sound of his voice and the emotion conveyed during the 9-1-1 call. In this situation, although the introduction of the prior convictions may have affected the jury's assessment of his credibility, that impact, arguably prejudicial to his defense, did not outweigh the probative worth of the evidence. See Long, 173 N.J. at 161. The court could have exercised its broad discretion to exclude the evidence as

15

unduly prejudicial.  See Nantambu, 221 N.J. at 402.  But it was not an abuse of discretion for the judge to have allowed it.  See Perry, 225 N.J. at 233.  All evidence is prejudicial.  The question is whether it is unfairly so.  Parker v. Poole, 440 N.J. Super. 7, 21-22 (App. Div. 2015).  It was not unfairly prejudicial in this case.

## IV.

The judge gave the following limiting instruction regarding defendant's record:

> Ladies and gentlemen [of the jury], you just heard evidence that [defendant] has previously been convicted of crimes.  That evidence can be used by you only for a certain purpose, and that is in determining the credibility or believability of the defense's case as evidenced by the [9-1-1] call. Okay.
>
> So when defense puts in the [9-1-1] call, the believability of . . . defendant's statement during that [9-1-1] call is in issue, and you can use this evidence that you just heard regarding his convictions only for the purpose in judging the credibility or believability of that [9-1-1] call.  You may not conclude that . . . defendant committed the crime charged or the crimes charged here in this case or is more likely to have committed the crimes charged simply because he committed crimes on a prior occasion.
>
> A jury has a right to consider whether a person who has previously failed to comply with society's rules, as demonstrated through criminal convictions, would be more likely than not to ignore the oath requiring truthfulness on the witness stand than a person who's never been convicted of a crime.  And

you may consider in determining this issue the nature and the degree of the prior convictions and when they occurred.

Now, our law permits a conviction to be received in evidence only for the purpose of affecting the credibility of . . . defendant and for no other purpose. You are not, however, obligated to change your opinion as to the credibility of . . . defendant simply because of any prior conviction. You may consider such evidence along with all other factors we've previously discussed in determining the credibility of . . . defendant.

Okay. Keep that in mind. That evidence is admitted only for a limited purpose.

[(emphasis added).]

The limiting instruction tracked the model charge. Model Jury Charges (Criminal), "Credibility – Prior Conviction of a Defendant" (rev. Feb. 24, 2003).

Where a defendant raises error in a jury instruction, the charge must be read as a whole. We do not consider just the allegedly erroneous portion. State v. Wilbely, 63 N.J. 420, 422 (1973). No party is entitled to have the jury charged in his or her own words. All that is necessary is that the overall instruction be accurate. Thompson, 59 N.J. at 411; Borowicz v. Hood, 87 N.J. Super. 418, 423 (App. Div. 1965).

When a defendant fails to object to the instruction in the trial court, Rule 1:7-2 provides that a showing of plain error must be made. "[P]lain error

17

requires demonstration of '[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'" State v. Burns, 192 N.J. 312, 341 (2007) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)); see also State v. Brown, 190 N.J. 144, 159-60 (2007) (failing to find plain error where the trial judge did not charge the jury regarding defendant's pre-arrest conduct and silence, which had been offered for impeachment purposes); State v. Chapland, 187 N.J. 275, 288-89 (2006). This instruction did not have the clear capacity to bring about an unjust result.

As defendant points out, there is the possibility that the jury may have woven defendant's prior criminal history into their deliberations in an impermissible manner. That possibility exists, however, in every trial in which a previously convicted defendant testifies, and his or her prior convictions are disclosed to the jury. Those juries are given the same model jury charge the trial judge gave here. The jury in this case, like in those instances, is assumed to follow the instruction and use the information for the limited purpose of the possible effect on credibility—and not for propensity. State v. Marshall, 173 N.J. 343, 355 (2002) (citing State v. Manley, 54 N.J. 259, 271 (1969)).

The use of prior convictions in criminal cases demands thoughtful and careful consideration in every case, as occurred here, and careful explanation to juries of the purposes for which they may be used—not for propensity, but strictly for credibility. Hamilton, 193 N.J. at 264; Cofield, 127 N.J. at 340-41. Here, the judge thoroughly considered the matter, adequately instructed the jury about the purpose for which they were provided the information, and did not abuse his discretion by the admission of the evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1307-16T3