**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2693-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSHUA M. GRAHAM,

    Defendant-Appellant.

_____

Submitted February 1, 2021 – Decided June 8, 2021

Before Judges Hoffman, Suter and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 17-05-0496.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin Walker, First Assistant Public Defender, of counsel and on the briefs).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a trial, defendant Joshua Graham was convicted of third-degree aggravated assault of a law enforcement officer, in violation of N.J.S.A. 2C:12-1(b)(5)(a), and third-degree resisting arrest, in violation of N.J.S.A. 2C:29-2(a)(3)(a). The trial court sentenced him to a six-year term of incarceration with a three-year term of parole ineligibility on the aggravated assault conviction, and to a concurrent four-year term on the resisting arrest conviction.

Defendant raises the following issues on appeal:

POINT I:

THE COURT DENIED DEFENDANT A FAIR TRIAL BY MATERIALLY ALTERING THE MODEL JURY CHARGE'S DEFINITION OF A "LAW ENFORCEMENT OFFICER."

POINT II:

THE TRIAL JUDGE COMMITTED PLAIN ERROR WHEN HE FAILED TO CHARGE THE JURY ON SELF DEFENSE, DESPITE EVIDENCE THAT SUCH AN INSTRUCTION WAS NOT WARRANTED. (NOT RAISED BELOW)

POINT III:

THE TRIAL JUDGE, IN VIOLATION OF THE RULES OF EVIDENCE, PERMITTED TESTIMONY ABOUT A DOMESTIC VIOLENCE RESTRAINING ORDER, THEREBY DEPRIVING DEFENDANT OF A FAIR TRIAL.

POINT IV:

DEFENDANT'S SENTENCE IS EXCESSIVE.

We reverse and remand for the reasons set forth below.

I.

On March 21, 2017 defendant and his girlfriend Lashonda Evans sat in the back of the Vineland municipal court, awaiting Evans' court case. Defendant was wearing a hooded sweatshirt, or "hoodie," in the courtroom. Officer Mark Rowe, a Vineland Police Department Class II special law enforcement officer, was assigned courtroom security duty that day. Officer Rowe motioned for defendant to remove the hoodie and defendant followed the officer's instructions.

After defendant removed the hoodie, Officer Rowe saw defendant wearing a red head covering and he asked defendant to remove it. Officer Rowe and defendant exchanged words, apparently in open court, regarding the red head covering, but defendant refused to remove it.

After defendant and Officer Rowe exchanged words, defendant stood in the courtroom and put his hands behind his back. At that moment, the municipal court judge asked defendant "to go outside." Officer Rowe escorted defendant and his girlfriend into the courtroom vestibule, between the court and the outer hallway. Officer Rowe testified defendant turned around and

chest bumped him. Officer Rowe then told defendant he was under arrest, and a struggle ensued.

Evans testified that defendant never bumped Officer Rowe and that Officer Rowe "continuously" punched defendant in the face in the vestibule. She testified that while Officer Rowe threw punches at defendant, defendant used his arms to cover his head. As they struggled, defendant and Officer Rowe burst through double doors leading out of the vestibule, into a hallway outside the courtroom where they slammed into a wall simultaneously. After both men hit the wall, Officer Rowe slipped and fell on his back. Defendant remained standing and turned away, extending his arms behind his back with his wrists close together towards Officer Rowe. Officer Rowe leapt to his feet, grabbed defendant and continued the altercation.

Officer James Sharpless, another Vineland Class II special law enforcement officer, came to Officer Rowe's aid. Officer Sharpless testified that when he entered the fray, Officer Rowe was wrestling with defendant and together the officers forced defendant to the ground, telling defendant not to resist arrest while handcuffing him. Officers Rowe and Sharpless got defendant onto his feet and began walking him from the end of the hall to the lobby. Officers Rowe and Sharpless testified that defendant kept struggling and finally head-butted Officer Rowe, resulting in a bruise to his face. After

4                                                                    A-2693-18

the head-butt, Officer Rowe testified he punched defendant in the face. Defendant was taken into police custody and received medical treatment for injuries he sustained during the fight.

Before trial, defendant moved to dismiss the indictment, arguing Officers Rowe and Sharpless were not law enforcement officers for purposes of N.J.S.A. 2C:12-1(b)(5)(a). The court denied the application, finding the record established that both Officers Rowe and Sharpless were on duty and working in a law enforcement capacity on the date of the incident.

## II.

At the motion to dismiss and at trial, the State called Captain Thomas Austino of the Vineland Police Department to explain the responsibilities of a Class II special law enforcement officer, the position held by Officer Rowe. He testified that a Class II officer was a part-time position which had the "full powers of being a police officer while they are on duty." Such officers were assigned a maximum of twenty to twenty-eight hours of work per week. As Class II officers, they wore the same police uniform,[1] were issued service weapons, and had the same arrest powers as full-time officers.

---

[1] State-mandated patches identifying the wearer as a Class II officer are affixed to the shoulder of the part-time Vineland police officers' uniforms.

Defendant's theory of the case at trial was that he did not commit an aggravated assault or resist arrest. Defendant testified at trial that he never chest-bumped Officer Rowe, and that Officer Rowe punched him in the vestibule before they tumbled into the courthouse hallway where the remainder of the encounter was captured on security video. He testified that, while in the vestibule, he "covered up" and that Officer Rowe "just kept punching" him. Defendant did not testify to any facts that would constitute self-defense. He testified that he swung his head to avoid a chokehold Officer Rowe placed on him once Officers Rowe and Sharpless subdued him.

Evans, the girlfriend, also testified at trial. The State cross-examined her about certain conditions in a domestic violence restraining order[2] defendant previously obtained against her. The State asked Evans if she was barred from contact with her children[3] as a condition of the restraining order. This question was premised on the State's misreading of the restraining order.

---

[2] The record does not contain the domestic violence restraining order, although the trial transcript reveals extensive colloquy between counsel and the witnesses, as well as counsel and the court, on the order's existence. The record is undisputed that defendant obtained a restraining order against Evans, and that the order and the restraints were dismissed by a judge at the request of defendant prior to defendant's trial on these charges.

[3] Evans had two biological children with defendant at the time the restraining order was issued against her. She was pregnant with their third child at the time she testified at trial.

There was no condition in the restraining order barring Evans from seeing her children. Evans testified that she was not barred from seeing her children, but the State and the trial court mistakenly believed the restraining order included such a condition, and that Evans' testimony was wrong. During sidebar, the court overruled defendant's N.J.R.E. 403 objection to the State's line of questioning. After Evans' testimony, but before defendant took the stand, the court instructed the jury they were "not to consider the fact that there may have been anything referenced in [the order] about restraining Mr. Graham from anything[,]" and "not [to] consider [the order's] existence as any evidence that Mr. Graham was restrained for any reason."

Defendant testified next. After lengthy cross-examination, the following exchange occurred:

> PROSECUTOR: And when you say the situation that I brought up, you mean when you were filed [sic] restraining order against her?
>
> DEFENSE COUNSEL: Objection, judge.
>
> DEFENDANT: The restraining order was filed because, you know—
>
> THE COURT: What's the objection?
>
> DEFENDANT: — her being pregnant.
>
> THE COURT: Hold on a second, sir.

7

DEFENSE COUNSEL: Talk — talking about matters that aren't relevant to this case.

THE COURT: Overruled. Go on.

DEFENDANT: I mean the reason why I filed a restraining order is because I got a baby on the way, I got two sons and I got a trial that I'm looking at. So I was like stressed out, you know what I mean. It's not that she did anything wrong.

DEFENSE COUNSEL: Objection.

THE COURT: All right. Sustained.

DEFENDANT: It's — it's not that she did anything wrong.

THE COURT: Move on. This — this is not relevant. Ladies and gentlemen, the reason for the restraining order, whatever those reasons may be, is not relevant to what you need to determine here.

After this exchange, the trial court gave two more curative instructions to the jury. First:

THE COURT: Ladies and gentlemen, and there's other ones, right? Whatever did or didn't happen with regard to a restraining order one way or another that's not this case either, right?

After a brief exchange between the court and counsel off the record, the judge provided a second curative instruction:

THE COURT: — now, okay. You do know of the existence of a restraining order and you can may [sic] consider that only to the extent that it may affect the credibility of a witness with regard to the testimony

8

here in the courtroom. Do you understand that? Either the [sic] existence of the restraining order itself. I don't think it was even this witness that it was actually relevant to. But the reasons for the restraining order are not your concern, and I'm striking that, okay.

At the charge conference, the defense argued Officer Rowe's part-time status as a police officer was inconsistent with the definition of law enforcement officer contained in the model jury charge corresponding to N.J.S.A. 2C:12-1(b)(5)(a), which includes full-time employment status as part of its definition. The trial court disagreed, finding the definition of law enforcement officer used in the aggravated assault model jury charge was derived from N.J.S.A. 40A:14-152.2. The court looked to N.J.S.A. 2C:25-19(c) to modify the model jury charge and chose not to be limited by the verbatim language in the original model charge. The statutory definition of "law enforcement officer" the court adopted reads as follows: "[A] person whose public duties include the power to act as an officer for the detection, apprehension, arrest and conviction of offenders against the laws of this state." Ibid.

On self-defense, defendant informed the court he would not request a charge. After summations and the charge, the jury found defendant guilty on both counts. After sentencing, defendant appealed.

9

## III.

### The Jury Charges

### A. Aggravated Assault of a Law Enforcement Officer

The court must not look at portions of the charge alleged to be erroneous in isolation; rather, "the charge should be examined as a whole to determine its overall effect," State v. McKinney, 223 N.J. 475, 494 (2015) (citing State v. Jordan, 147 N.J. 409, 422 (1997)), and "whether the challenged language was misleading or ambiguous." State v. Nelson, 173 N.J. 417, 447 (2002) (citing State v. Simon, 161 N.J. 416, 477 (1999)); see also State v. Torres, 183 N.J. 554, 564 (2005). No party is entitled to have the jury charged in his or her own words. All that is necessary is that the charge as a whole be accurate. State v. Outland, 458 N.J. Super. 357, 372 (App. Div. 2019) (citing State v. Thompson, 59 N.J. 396, 411 (1971)).

The trial court gave the jury a modified aggravated assault charge using the N.J.S.A. 2C:25-19(c) definition. Defendant did not object to the charge as given; therefore, we apply a plain error standard to review the trial court's modification of the model jury charge.

N.J.S.A. 2C:12-1(b)(5)(a), the aggravated assault statute, does not define the term, "law enforcement officer." The statute provides, in relevant part: "A person is guilty of aggravated assault if the person [c]ommits a simple assault

10                                                          A-2693-18

upon any law enforcement officer acting in the performance of the officer's duties while in uniform or exhibiting evidence of authority or because of the officer's status as a law enforcement officer . . . ." Ibid.

Defendant argues that while N.J.S.A. 2C:12-1(b)(5)(a) does not have a definition of "law enforcement officer," the model jury charge corresponding to N.J.S.A. 2C:12-1(b)(5)(a) has one. As written, the model charge defines the term this way:

> A law-enforcement officer is any person who is employed as a permanent full-time member of any State, county or municipal law-enforcement agency, department or division of those governments and who is statutorily empowered to act for the detection, investigation, arrest, conviction, detention or rehabilitation of persons violating the criminal laws of this state.
>
> [Model Jury Charges (Criminal), "Aggravated Assault Upon Law Enforcement Officer Attempting to Cause or Purposely, Knowingly or Recklessly Causing Body Injury (N.J.S.A. 2C:12-1(b)(5)(a), (b), (c), (d), (e), (f), (g))" (rev. Dec. 3, 2001).]

Defendant argues Officer Rowe's status as a part-time Class II officer excludes him from the class of protected persons in the aggravated assault statute, rendering the charge against defendant inapplicable. We disagree.

The question is how to interpret the term law enforcement officer in the context of this section of the Criminal Code. We review matters of statutory interpretation de novo. Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294

11

(2017). Courts "look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." McGovern v. Rutgers, 211 N.J. 94, 108 (2012) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)). "The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 282 (2003)). Thus, any analysis to determine legislative intent begins with the statute's plain language. Ibid. Our authority is bound by clearly defined statutory terms. Febbi v. Bd. of Rev., 35 N.J. 601, 606 (1961). Where a specific definition is absent, "[w]e must presume that the Legislature intended the words it chose and the plain and ordinary meaning ascribed to those words." Paff v. Galloway Twp., 229 N.J. 340, 353 (2017) (citing DiProspero, 183 N.J. at 492).

However, our review "is not limited to the words in a challenged provision." State v. Twiggs, 233 N.J. 513, 532 (2018). A court "'can also draw inferences based on the statute's overall structure and composition,' and may consider 'the entire legislative scheme of which [the statute] is a part.'" Ibid. (alteration in original) (citations omitted). "We do not view [statutory] words and phrases in isolation but rather in their proper context and in

12

relationship to other parts of [the] statute, so that meaning can be given to the whole of [the] enactment." Id. at 533 (alterations in original) (quoting State v. Rangel, 213 N.J. 500, 509 (2013)).

Furthermore, "[t]he Legislature is presumed to be familiar with its own enactments, with judicial declarations relating to them, and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose." State v. Federanko, 26 N.J. 119, 129 (1958) (citing Appeal of N.Y. State Realty & Term. Co., 21 N.J. 90 (1956)).

N.J.S.A. 2C:12-1(b)(5) expressly protects an extensive class of public and private employees, including, but not limited to: law enforcement officers, paid or volunteer fire personnel, medical first responders, Department of Corrections employees, sheriff's deputies, and even select private sector employees such as utilities workers. Two qualifications common to this protected class of workers are that they can be identified as uniformed personnel or otherwise "be clearly identifiable as being engaged in the performance of" their official duties. N.J.S.A. 2C:12-1(b)(5)(a) to (k). There is no full or part-time qualification for protected class members in the express language of the statute.

The record shows Officer Rowe, in uniform and clearly exhibiting evidence of his authority, instructing defendant to remove his hoodie. After

finding no definition of "law enforcement officer" in N.J.S.A. 2C:12-1(b), the trial judge looked to a cognate section of the criminal code, the Prevention of Domestic Violence Act,[4] to find a relevant definition, N.J.S.A. 2C:25-19(c). The trial court next drew "'inferences based on [N.J.S.A. 2C:12-1(b)(5)'s] overall structure and composition,' and…consider[ed] 'the entire legislative scheme of which [N.J.S.A. 2C:12-1(b)(5)] is a part….'" Twiggs, 233 N.J. at 532. (citations omitted).

The court's consideration of Captain Austino's testimony and use of N.J.S.A. 2C:25-19(c) ensured "that the charge as a whole [was] accurate." Outland, 458 N.J. Super. at 372. We conclude that the trial court properly searched the New Jersey Criminal Code to find an appropriate definition of law enforcement officer from a cognate statute and applied that definition to modify the applicable jury charge consistent with the facts of this case. We are mindful that "[t]he Model Jury Charges are only guidelines, and a trial judge must modify the Model Charge when necessary so that it conforms with the facts, circumstances, and law that apply to the facts being tried." State v. Green, 318 N.J. Super. 361, 376 (App. Div. 1999) (citing State v. Concepcion, 111 N.J. 373, 379 (1988)), aff'd, 163 N.J. 140 (2000). The trial court's

---

[4] N.J.S.A. 2C:25-17 to -35.

A-2693-18

resourceful modification of the model charge[5] under these facts did not lead to an unjust result.

## B.  Self-Defense

Defendant never sought a self-defense instruction, and specifically advised the court that no charge request on self-defense was forthcoming. Appellate courts will not consider questions or issues not properly presented to the trial court, unless the question raised on appeal goes to the jurisdiction of the trial court or concerns matters of great public concern.  State v. Robinson, 200 N.J. 1, 20 (2009) (citing Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).  However, in the interest of justice, the appellate court may "'notice plain error not brought to the attention of trial court[,]' provided it is 'in the interests of justice' to do so."  Ibid. (quoting R. 2:10-2).  Given defendant's express disclaimer of self-defense before the trial court, there is no need for protracted analysis.

---

[5]  We note that the N.J.S.A. 2C:12-1(b)(5)(a) Criminal Model Jury Charge definition of law enforcement officer cites as its source a definition drawn from N.J.S.A. 40A:14-152.2, "Immunities and benefit of police officer in lawful exercise of statewide police powers."  The definition, cited above, limits itself to "any person who is employed as a permanent full-time member of a municipal law enforcement agency."  Because the trial court properly modified the charge consistent with the facts of the case, we need not decide whether the model charge's use of the qualified immunity statute's definition of a law enforcement officer, which distinguishes between full and part-time law enforcement officers, is appropriate.

For completeness' sake, we note the use of a self-defense jury instruction here would run counter to defendant's theory of the case. The record reveals defendant's strategy to persuade the jury that he did not make offensive contact with Officer Rowe. In State v. Vasquez, 265 N.J. Super. 528 (App. Div. 1993), we held a trial court's failure to charge self-defense was not plain error where the charge was not requested and would have been prejudicial to the defendant's strategy of the case. Id. at 552. "Defendant never claimed that he had to use force," and thus "no plain error resulted from the judge's failure to charge imperfect self-defense." Ibid. Consistent with Vasquez, we find no plain error on these facts.

### C. The Domestic Violence Restraining Order

A trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion. State v. Singh, 245 N.J. 1, 12 (2021) (quoting State v. Nantambu, 221 N.J. 390, 402 (2015)). Under this standard, a trial court's decision to admit evidence should not be overturned "unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide [of] the mark that a manifest denial of justice resulted." State v. Lykes, 192 N.J. 519, 534 (2007) (quoting Verdicchio v. Ricca, 179 N.J. 1, 34 (2004)).

After the trial court permitted, over defendant's objections, Evans' testimony about the conditions in her restraining order, it gave a limiting instruction to the jury:

> You heard some testimony about the existence of the restraining order here and you also heard some testimony about what was or was not contained within the restraining order. You're not to consider the fact that there may have been anything referenced in there about restraining Mr. Graham from anything. Okay? Second of all, you can only consider the restraining order itself as evidence as it may affect the credibility of the witness. So that's the only reason you can consider whether or not there was or was not a restraining order and whether it had any effect on her credibility. You're not to consider the fact that there may have been anything referenced in there about restraining Mr. Graham from anything.

As to the State bringing up the order during defendant's cross-examination, the State argues it was defendant who first raised the restraining order, thus opening the door and undercutting his argument on appeal. In turn, defendant says his case was "irreparably harmed" when the trial court permitted the State to cross-examine both he and Evans about the restraining order.

State v. Vallejo, 198 N.J. 122 (2009) provides a proper framework for reviewing the potential prejudicial impact of domestic violence restraining order testimony on a criminal trial. We first address whether the restraining

order testimony was properly before the jury during the testimony of either Evans or defendant.

The first category of challenged evidence is Evans' restraining order testimony. The State argues that its cross-examination of Evans regarding conditions of the restraining order was permissible to show her motivation in testifying at trial for the defense, citing N.J.R.E. 607 in support.

The record reveals the State was inartful in its execution of this strategy by posing questions to Evans premised on its mistaken understanding of the conditions of the restraining order. When Evans testified correctly that she was not barred from seeing her children, the State pursued follow-up questions about the restraining order during cross.

The trial court, misled by the State's confusion about the order's contents, overruled repeated defense objections. It was only after Evans left the witness stand that the State conceded it had misread the restraining order. There was no condition barring Evans from seeing her children, hence there was no factual or legal basis for the State to pose follow-up questions on cross, nor was there any basis for the court to overrule defendant's objections on impeachment grounds.

"Although extrinsic evidence may be admitted to impeach a witness, under N.J.R.E. 607, its probative value as impeachment evidence must be

assessed independently of its potential value as substantive evidence." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 494 (1999). "Irrelevant evidence which might improperly affect a witness' credibility may not be admitted into evidence." State v. Hutchins, 241 N.J. Super. 353, 361 (App. Div. 1990).

If the facts had been as the State mistakenly believed them to be, very limited questioning of Evans would arguably have been appropriate regarding the existence of an order that prevented her from seeing children; however, if permitted, that line of questioning should have been sanitized to refer to a court order, not a domestic violence restraining order. See State v. Hamilton, 193 N.J. 255, 265-66 (2008) (holding that the trial court should have exercised its discretion to sanitize evidence to avoid prejudicing defendant). To make matters worse, the colloquy regarding the restraining order generated a curative instruction from the trial court which negatively impacted defendant's ability to have a fair trial.

The second category of challenged evidence is defendant's testimony about the restraining order elicited during his cross-examination. Defendant argues that he was compelled to answer the State's questions about an unrelated domestic violence incident which biased the jury and denied him a fair trial. We agree. The domestic violence restraining order defendant sought and obtained as a victim was unrelated to the charges for which he was on

19

trial. The restraining order references during defendant's cross had no relevance to the criminal trial, and "had a real potential to prejudice defendant." Vallejo, 198 N.J. at 134. This irrelevant and inadmissible evidence seeped into the trial. Ibid. The prejudicial impact on the defendant was real and unmistakable.

We now "turn to the efforts of the [trial court] to neutralize the negative effects of what transpired." Ibid. Generally, for a curative instruction to pass muster in such circumstances, the instruction given to a jury must be firm, clear, and accomplished without delay. Ibid. (citations omitted). Our Supreme Court has "stressed the importance of immediacy and specificity when trial judges provide curative instructions to alleviate potential prejudice to a defendant from inadmissible evidence that has seeped into a trial." Vallejo, 198 N.J. at 135 (citing State v. Wakefield, 190 N.J. 397, 440, 452 (2007)).

The trial court's first curative instruction, given during Evans' testimony, raises concerns. The trial court sent the jury out and heard argument about Evans' restraining order testimony. It was at this juncture the State first conceded it misread the order and that Evans' recollection of the order's contents was correct. The court brought the jury back and gave conflicting curative instructions. First, it instructed the jury "not to consider the fact that there may have been anything referenced in [the order] about restraining Mr.

Graham from anything."  This unclear instruction left the jury to speculate that there may have been some restraint against defendant.  Counsel and the court had just completed their lengthy sidebar.  They knew unequivocally there was no such restraint.  The court's second instruction, given at the same time, was as follows: "[y]ou're not to consider the fact that there may have been anything referenced in [the order] about restraining Mr. Graham from anything."  Again, this curative instruction is not clear.  Once more, the jury was left to speculate about the contents of the restraining order.

We conclude Evans' restraining order testimony was permissible if properly sanitized; however, its corresponding curative instruction tainted the jury in advance of the prejudicial restraining order exchange between the State and defendant.

We now review the trial court's curative instructions given to the jury after the State's prejudicial cross-examination of defendant.  In this instance, the instructions do not meet the <u>Vallejo</u> standard.  They were not firm or clear. Even at this trial stage the court remained equivocal as to the existence of a restraining order against defendant when the record was clear there was none. Importantly, the jury was already tainted by the Evans curative instruction. The mere mention of the restraining order during defendant's testimony compounded the harm.  By the time the court finally instructed the jury that it

was effectively striking any restraining order testimony, the damage had been done.

We conclude the trial court's failure to sustain the relevance objection during the State's cross-examination of defendant was a mistaken exercise of discretion which permitted inadmissible testimony before the jury and thereby prejudiced defendant. The instructions fell short of the Vallejo standard in that they were not firm, clear, or timely. This prejudice was actual, not potential, and the limiting instructions were not sufficient. Cf. State v. Rose, 206 N.J. 141, 166 (2011). Defendant was charged with a crime of violence. The State alleged that he had assaulted a police officer. The State introduced into evidence, through the testimony of two defense witnesses, a domestic violence restraining order. The jury received multiple curative instructions from the trial court from which they may have concluded that defendant had a propensity for violent conduct. On this record, the mere mention of the restraining order during defendant's testimony resulted in a manifest denial of justice. Lykes, 192 N.J. at 534 (quoting Verdicchio, 179 N.J. at 34 (2004)). The error here is not harmless. State v. Gillispie, 208 N.J. 59, 93 (2011).

Based upon our finding that harmful error occurred in this case, we vacate defendant's conviction and remand for a new trial. Given our decision to vacate defendant's conviction and order a new trial, we need not address

defendant's excessive sentence contentions. Furthermore, any argument not addressed here lacks sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Reversed and remanded for a new trial as to both counts. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23